Certified mail # 7019 2280 0001 6170 6099

FORM TO BE USED BY FEDERAL INMATES IN FILING A CIVIL ACTION UNDER 28 USC § 1331 OR § 1346          REVISED 8/05

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
_____ DIVISION

LENROY MCLEAN
_____

_____

(Enter above the full name and inmate number
of each plaintiff in this action)

VS.                                              Case No. 1:21 cv 168
                                                 (Clerk will assign the number)
United States of America
Michael W. Lockhart (AUSA)          Trial by Jury
J. Baltazar (Regional Dir.) cont.
(Enter above the full name of each defendant in this action).

**I.     PREVIOUS LAWSUITS:**

A.   Have you filed *any* other lawsuits in state or federal court dealing with the same
     facts involved in this action or otherwise relating to your imprisonment?          ____YES  ✓ NO

B.   If your answer to "A" is "yes," describe each lawsuit in the space  below.  (If there is more than one
     lawsuit, describe the additional  lawsuits on another piece of paper, giving the same information.)

     1.   Approximate date of filing lawsuit:_____

     2.   Parties to previous lawsuit:
          Plaintiff(s)_____

          Defendant(s)_____

     3.   Court: (If federal, name the district; if state, name the county.)_____

     4.   Docket Number:_____

     5.   Name of judge to whom case was assigned:_____

     6.   Disposition:  (Was the case dismissed, appealed, still pending?)

          _____

     7.   Approximate date of disposition:_____

1

Caption Continuation

Sonya Cole (SCRO)
M. R. Lewis (Warden)
Cathy Cutwright (AW)
FNU, Heno (AW)
FNU, Brasfield (Captain)
Russell Taylor (unit manager)
Wanda Jones (Case manager)
Rodney Dauis (Counselor)
FNU Polavarapu (Doctor)
FNU McGarvey (Psychology)
FNU Steffey (lieutenant)
FNU Fontenot (lieutenant)
FNU Brownfield (lieutenant)
FNU Hanson (lieutenant)
FNU Williams (SHU officer)
FNU Chiles (SHU officer)
L. Jones (SHU officer)
Deshawn Davis (mailroom officer)
FNU Laidler (S.I.A)

(1-B)

**II.     PLACE OF PRESENT CONFINEMENT:** _Beaumont FCI Med_

**III.    EXHAUSTION OF GRIEVANCE PROCEDURES:**

Pursuant to 42 U.S.C. § 1997e(a), exhaustion of administrative remedies is required prior to initiating a civil rights action or Federal Tort Claims Act lawsuit. Copies of all grievances, appeal and responses must be submitted to verify exhaustion. Failure to demonstrate exhaustion may be grounds for dismissal. The rules for federal prisoners are found at 42 C.F.R. §§ 542.10, *et seq.*

1.  **Informal Grievance**

    a.  Did you submit an informal grievance _____✓ YES _____ NO
        If so, you must attach a copy of the grievance and response.

    b.  If not, then why not?
        _Plaint Plaintiff has exhausted all available administrative remedies for each claim, given the frustration of such_

2.  **Formal Grievance**

    a.  Did you submit a formal grievance (BP-9)? _____✓ YES _____ NO
        If so, you must attach a copy of the grievance and response.

    b.  If not, then why not?
        _Plaintiff has exhausted all available administrative remedies for each claim, given the frustration of such (See Attachments)_

3.  **Appeal to the Regional Director of the Bureau of Prisons**

    a.  Did you timely submit an appeal to the Regional Director (BP-10)? _____✓ YES _____ NO
        If so, you must attach a copy of the appeal and response.

    b.  If not, then why not?
        _Plaintiff has exhausted all available administrative remedies for each claim, given the frustration of such_

4.  **Appeal to the General Counsel of the Bureau of Prisons**

    a.  Did you timely submit an appeal to the General Counsel of the Bureau of Prisons (BP-11)? _____✓ YES _____ NO
        If so, you must attach a copy of the appeal and response.

    b.  If not, then why not?
        _Plaintiff has exhausted all available administrative remedies for each claim, given the frustration of such_

**IV.    PARTIES TO THIS SUIT:**

    A.  Name and address of each plaintiff: _Lenroy Mclean Reg # 61524-054_
        _Beaumont FCI-Med, P.O. Box 26040, Beaumont, Tx 77720_

B. Full name of each defendant, his official position, his place of employment, and his full <u>mailing</u> address. If you are bringing a civil rights lawsuit against federal employees, then your lawsuit should be filed pursuant to 28 U.S.C. § 1331. If you are bringing a Federal Tort Claims Act lawsuit under 28 U.S.C. § 1346, then the only defendant will be the United States of America.

Defendant #1: United States of America - unknown, possible 350 Magnolis Ave, Ste 150, Beaumont, Tx 77701

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you. False imprisonment Abuse of process, Negligence by law Enforcement officer of the FBOP

Defendant #2: Michael W. Lockhart - local AUSA - 350 Magnolis Ave Ste 150, Beaumont, Tx 77701

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you. Deliberate indifference to plaintiff's grievance frustration and impediment

Defendant #3: J. Baltazar - Regional director - South Central Regional office (SCRO) 344 Marine force Dr, Grand Prairie, Tx 75051

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you. Deliberate Indifference of a substanial risk of serious harm (Black mold) of Plaintiff

Defendant #4: Sonya Cole - FOIA/PA personnel - SCRO - 344 Marine force Dr, Grand Prairie, Tx 75051

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you. Conspired to Aided and Abetted to cover up and concealed evidence, under color of State law
Continue on page 3-B ...

V.   **STATEMENT OF CLAIM:**

State here in a short and plain statement the facts of your case, that is, what happened, where it happened, when it happened, and who was involved. Describe how <u>each</u> defendant is involved. <u>Do not give any legal arguments or cite any cases or statutes</u>. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember that the complaint must be stated briefly and concisely. **IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.**

The factual basis for all first, fifth, eight amendment to the United States Constitution of defendants under state law claims and federal tort claim act arise out of their illegal, unconstitutional, conspirational and criminal conduct committed at the federal Bureau of Prisons - Beaumont FCI (Low), ("Beaumont") in the defendants' individual and personal capacities. Continue pg. 3-2

3

Continuation

Defendant #5: M.K. Lewis, Warden, Beaumont FCI - P.O. Box 26020, Beaumont, Tx 77720
Act(s) or Omission(s): Deliberate indifference of a risk that was obvious and conspired with other defendants to inflicted emotion stress on Plaintiff.

Defendant #6: Cathy Cutright, Assistance Warden, Beaumont FCI - P.O. Box 26020, Beaumont, Tx 77720
Act(s) or Omission(s): Acted has an agent under the color of state law, partake in the fabrication, conspiracy to create false government document and frustrate the grievance procedure in retaliation toward Plaintiff

Defendant #7: FNU, Heno, Assistance Warden, Beaumont FCI - P.O. Box 26040, Beaumont, Tx 77720
Act(s) or Omission(s): Acted has an agent under the color of state law, retaliated against Plaintiff knowing of risk (scabies) that was obvious (Deliberate Indifference)

Defendant #8: FNU, Brasfield, Captain, Beaumont FCI - P.O. Box 26040, Beaumont, Tx 77720
Act(s) or Omission(s): Acted has an agent under the color of state law, knowingly conspired to cover-up a fraud and retaliated on behalf of a fellow superior

Defendant #9: Russell Taylor, unit manager, Beaumont FCI - P.O. Box 26020, Beaumont, Tx 7772
Act(s) or Omission(s): Frustrated, impeded Plaintiff grievences and racial bigotry

3-R

Defendant #10: WANDA JONES, CASE MANAGER, BEAUMONT FCI-P.O. Box 26020, Beaumont, Tx 77720
Act(s) or Omission(s): Conspired to fabricated and falsified government document, retaliate and discriminated acting has an agent, under the color of STATE LAW.

Defendant #11: Rodney DAVIS, Counselor, Beaumont FCI - P.O. Box 26020, Beaumont Tx 77720
Act(s) or Omission(s): Acted has an agent under the color of STATE LAW, conspired to falsified and fabricated government document, racial bigotry and retaliated to inflicted emotion stress on Plaintiff

Defendant #12: FNU, POLAVAKAPU, doctor, Beaumont FCI-P.O. Box 26020, Beaumont Tx 77720
Act(s) or Omission(s): Acted has an agent under the color of STATE LAW, violation HIPPA, conspired to falsified report and failure to administer force feed.

Defendant #13: FNU, McGARVEY, psychology, Beaumont FCI-P.O. Box 26020, Beaumont, Tx 77720
Act(s) or Omission(s): Acted has an agent under the color of STATE LAW, conspired with other defendants to inflict emotion stress and failed to report Plaint Plaintiff's been on hunger strike

Defendant #14: FNU STEFFEY, lieutenant, Beaumont FCI-P.O. Box 26020, Beaumont, Tx 77720
Act(s) or Omission(s): Acted has an agent under the color of STATE Law, conspired with other defendants

to manufactured detention order in retaliation & inflicted emotional stress on Plaintiff

Defendant #15: FNU Fontenot, Lieutenant, Beaumont FCI, P.O. Box 26020, Beaumont, Tx 77720
Act(s) or Omission(s): Acted has an agent under the color of State Law, conspired with other defendants to manufactured detention order in retaliation to inflict emotional stress on Plaintiff

Defendant #16: FNU Brownfield, Lieutenant, Beaumont FCI - P.O. Box 26020, Beaumont, Tx 77720
Act(s) or Omission(s): Acted has an agent under the color of State Law, when he maliciously used force to provoke, inti midate and cause harm to Plaintiff and violated H.I.P.P.A

Defendant #17: FNU Hanson, SIS Lieutenant, Beaumont FCI, P.O. Box 26020, Beaumont, Tx 77720
Act(s) or Omission(s): Acted has an agent under the color of State Law, conspired to falsely imprisonment and false arrest of Plaintiff inflicted emotional stress.

Defendant #18: FNU Williams, (SHU officer), Beaumont FCI, P.O. Box 26020, Beaumont, Tx 77720
Act(s) or Omission(s): Acted has an agent under the color of State Law, aided and abetted the assault of Plaintiff

Defendant #19: FNU Chiles, (SHU officer), Beaumont FCI, P.O. Box 26020, Beaumont, Tx 77720
Act(s) or Omission(s): Acted has an agent under the color

3-D

of STATE LAW, when he denied Plaintiff several meals in retaliation

Defendant #20: L. Jones, (SHU officer), Beaumont FCI, - P.O. Box 26020, Beaumont, Tx 77720
Act(s) or Omission(s): Acted has an agent under the color of STATE LAW, denied Plaintiff medical assistance

Defendant #21: Deshawn Davis, mailroom officer (Davis' spouse), Beaumont FCI, - P.O. Box 26040, Beaumont, Tx 77720
Act(s) or Omission(s): Acted has an agent under the color of STATE LAW, conspired with others to the obstruction of mail, correspondence and courts in retaliation.

Defendant #22: FNU Laidler, SIA, Beaumont FCI - P.O. Box 26020, Beaumont, Tx 77720
Act(s) or Omission(s): Acted has an agent under the color of STATE LAW, knowingly conspired to cover-up the civil and criminal conduct of fraud and retaliation on behalf of a fellow superior

3-F

Here, Defendants had all colluded, conspired, agreed and aided and abetted in violation of Texas State Law (civil conspiracy) rigged, fixed and contaminated the BOP's administrative remedies processes and procedures having the illegal objective to cover-up, suppress conceal and hide all evidence of poisonous black mold at the Beaumont Federal Correctional complex where Plaintiff suffered injuries, harms and damages from such and been bullied, coearse, intimidate and generally frustrate Plaintiff exercising his First amendment to such. ... Statement of Claims continue on page 3-2

**VI.    RELIEF:** State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

56. Plaintiff request an order declaring that the defendants have acted in violation of the United States Constitution

57. Plaintiff request a trial by a jury. Continue on page 4-2

**VII.    GENERAL BACKGROUND INFORMATION:**

A. State, in complete form, all names you have ever used or been known by including any and all aliases:

_____

B. List all prisoner identification numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you, if known to you. ~~~~~~ Don't Remember State Number

_____

**VIII.    SANCTIONS:**

A. Have you been sanctioned by any court as a result of any lawsuit you have filed?        _____YES  ✓ NO

B. If your answer is "yes," give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

   1. Court that imposed sanctions (if federal, give the district and division): _____

   2. Docket Number:_____

   3. Approximate date sanctions were imposed:_____

   4. Have the sanctions been lifted or otherwise satisfied?        _____YES  ✓ NO

C. Has any court ever warned or notified you that sanctions could be imposed?        ✓ YES _____NO

4

V. | Statement of Claim: Continuation pg. 3-2

1. Plaintiff hereby pursuant to his rights under Seventh Amendment hereby demands a trial by jury on each federal and State law claim where Plaintiff seeks damages at law as well as injunctive relief on each claim.

2. Lenroy McLean (Plaintiff) is a resident of the State of Texas by virtue of the fact that he has been domiciled in the state since 2014 at the Beaumont Federal Correctional Complex (LOW)

3. Upon information and belief, for the time period of Oct. 2015 thru Dec. 2018, J. Baltazar knew of the black mold poisoning on the Beaumont Federal Correctional Complex See Exhibit-A

4. That, the Professional Service Industries (PSI)" use of this report by anyone other than Federal Bureau of Prison's for whom it was prepared "was prohibited to conceal the health hazard of such. Id at Exhibit-A; pg. 12-5.2

5. That, on the 19th of Jan. 2019, Plaintiff attempted was to retrieved the PSI report due to medical complication and or symptoms of black mold poisoning. See Exhibit-B

6. On or about Jan. 21, 2019 @ 7:49:15 AM, Plaintiff forwarded an email to warden Lewis with concerns - resulted into an informal resolution attempt that was ignored. Plaintiff then filed a sensitive issue to the SCRO. See Exhibit-C

7. By the 28th of Jan. 2019 @ 6:31:51 AM, Plaintiff wrote another email to Warden Lewis and requested evidence of the CCTV footage be preserved of inmates purging black mold from the Rear exit door on his unit (XB) See Exhibit-D

8. On or about Jan. 29, 2019 Rodney Davis viciously discriminated against Plaintiff, when he practice an insidious form of retali racial epithet by directly stating "you stupid/banana boat entry, you really believe you will accomplish your goal?"

9. That on or about Jan. 30, 2019, SCRO issued a receipt for Plaintiff's request as to the claim in paragraph 3, under FOIA/PA request #2019-01583

10. By the 31st of Jan. 2019, Plaintiff was placed in administrative detention on unspecified charges under the veneer of an SIS investigation

11. Upon information and belief, Lt. Steffey and Lt. Fontenot authorized the administrative detention of Plaintiff

12. On the 5th of Feb. 2019, Plaintiff requested his administrative detention order from Warden Lewis during his SHU rounds - he instructed Capt. Brasfield to provide such, Brasfield passed the baton to Lt. Hanson (SIS) - Plaintiff attempted was futile.

13. That, on the 6th of Feb. 2019, Plaintiff declare an hunger strike with an attempt to exercise his constitutional

right and put his sentencing court on NOTICE of such- due to his deadline within that court on this particular day.

14. By the 12th of Feb. 2019, Plaintiff puts WARDEN LEWIS ON NOTICE of his hunger strike - because Capt. Brasfield failed was to produce the detention order

15. That, Lewis left and returned with Brasfield and Lt. Brown field - in the present of their superior (WARDEN LEWIS) Plaintiff WAS threaten with AN attempt to intimidate him. Brasfield stated "I can lock you up for whatever" And Brownfield threaten to "crack Plaintiff skull."

16. On the 13th of Feb. 2019 Plaintiff confer with Dr. McGarvey about his hunger strike for eight consecutive days - McGarvey made note of such And assure Plaintiff he would notified medical

17. On the 15th of Feb. 2019, Plaintiff reported to both SHU officers (Clipper And L. Jones) that he was having chest pains, felt dizzy with severe headaches And needed medical

18. That, Jones (SHU officer) stated "he was not going to call medical, because you need to eat" - without notifying medical

19. That, on the 17th of Feb. 2019, Plaintiff push the duress button after his chest pains became more severe - Lt. Dortch and officer Lyham notified medical. The nurse took only Plaintiff's blood pressure

20. That, nurse asked Plaintiff "Why you refuse to eat?" Plaintiff requested to speak with SIA Laidler-Dortch stated "that would not be possible" and Lyham stated "we really dont give a fuck if you dont eat."

21. On the 19th of Feb. 2019, L. Jones removed Plaintiff from his cell (C-223) for a partial medical assessment (BP and sugar only)

22. That, Brownfield entered the medical assessment room with inquiries has to Plaintiff-Plaintiff asked Dr. Polavarapu to educate Brownfield on H.I.P.P.A. Polavarapu became very agitated and instructed Brownfield to "get him out of here".

23. That, Plaintiff was then placed in a dry cell without any water to drink and/or flush the toilet with urine and a inoperative lock-box was placed on his feed-up slot, which made it unable to access trays

24. On or about Feb. 20th, 2019, Dr. Polavarapu entered an agreement to write a fictitious report highlighten that "Per SHU officials, inmate did consume [??2] meals, yesterday, 2/19/19...."

25. That as to the claim in paragraph 10, both signature of lieutenants had been forged and the detention order failed was to indicate any prohibited act code been investigated.

26. On or about Feb. 25, 2019, Laidler (SIA) suggested that Plaintiff wrote a letter of apology for threatening warden Lewis

27. That, on the 25th of Feb. 2019, Plaintiff's weight had drop to 201 lbs and his sugar level was 67, as to the claim in paragraph 13

28. On the 1st of March 2019, Lt Brownfield entered Plaintiff's cell and assaulted Plaintiff without provocation

29. That, officer Williams aided and abetted the assault on Plaintiff by failing to protect Plaintiff when he was being assaulted by Brownfield - Williams committed a criminal violation suppressing and/or failing to report Brownfield assault of Plaintiff

30. That as to the claim in paragraph 13 and 27, Plaintiff weight had drop within another five days.

31. On the 3rd of March 2019, Plaintiff confronted officer Chiles about not placing his trays in the lock-box, chiles stated "I don't care, write it up - lets see how far you get."

32. On or about March 5th, 2019, Taylor, refused to provided Plaintiff with administrative receipt with an attempt to frustrate the grievance procedure

33. That, Brasfield and McGarvey knew that Plaintiff

have not been gaining access to his trays, as to the claims in paragraph 23 and 31

34  That, Lt Brownfield and officer Robinson had adjusted the lock-box for Plaintiff to access his trays, ending the alleged hunger strike.

35  On or about March 13th, 2019, Lt Hansen wrote a fictitious incident report that alleged Plaintiff had threaten warden Lewis as to the claim in paragraph 9

36  On the 14th of March 2019, Rodney Davis conducted Plaintiff's UDC hearing and altered Plaintiff statement before he referred the fictitious charge to the disciplinary hearing officer, as to the claims in paragraph 10 and 35

37  On or about April 2nd, 2019, Plaintiff confer with warden Lewis about Taylor's attempt to frustrate the grievance procedure, as to the claim in paragraph 32

38  On or about April 10th, 2019, Sonya Cole jointly and severally, colluded, conspired and aided and abetted the civil and criminal violation of Plaintiff's rights by refused was to preserve CCTV footage relevant to pending and or future litigation within this court

39  On or about April 24, 2019, Deshawn Davis (spouse of Davis) conspired, agreed and aided and abetted defendants with the interception and interference with Plaintiff's

legal correspondance with the courts. See Exhibit-E

40  By the 23ᴿᴰ of May 2019, inmate MARTIN DOMINGUEZ # 24418-112, who was afflicted with SCABIES was placed in the same cell with Plaintiff

41  That, AW HARO walked the SHU on the 28ᵗʰ of May 2019 and asked Plaintiff "ARE you SCARED? I can call the doctor for you" - with a smirk on his face, as to the claim in PARAGRAPH 40

42  Upon information and belief, Plaintiff had put the local U.S. attorney's office on "NOTICE" of warden Lewis and his administration frustrating the grievance procedure on 6-30-2019, as to the claims in PARAGRAPH 32 and 37 See Exhibit-F

43  On the 26ᵗʰ of June 2019, Beasfield released Plaintiff from SHU without his legal-material and told Plaintiff "you need to show some gratitude" as to the claim in PARAGRAPH 9 See Exhibit-G

44  By the 8ᵗʰ of July 2019 Plaintiff filed a tort claim with the South Central regional office. See Exhibit-H

45  On the 11ᵗʰ of July 2019 @ 11:36 am, DAVIS attempted was to intimidate, provoke and harass Plaintiff by acting in an overly aggressive tone "I wish they had giving me the opportunity to shove the tube down

that motherfucker throat."

46  That on July 17th, 2019 @ 12:30pm, DAVIS SEARCHED Plaintiff's cell and left such in disARRAY-IN A form of HARASSMENT and/or RETALIATION AS to the claim in PARAGRAPH 44

47  On the 18th of July 2019, Plaintiff submitted A complaint with the Federal Coordination and compliance section AS to the claims in PARAGRAPHS 46 And 48. SEE Exhibit-I.

48  That, AW Cathy Cutright and WANDA Jones did knowingly And intentionally conspired to retaliate, discriminated And AGGRAVATE Against Plaintiff by entering FALSE information in AN official document.

49  That, Russell Taylor viciously discriminated Against Plaintiff and practiced AN insidious form of RACIAL epithets by directly stated that "his tax-paying dollars" was taking care of Plaintiff.

50  On the 23rd of July 2019 @ 1:16pm, DAVIS And Jones Asked Plaintiff "why you Even show-up for team meetings?"-AS to the claim in PARAGRAPH 47

51  By the 29th of July 2019 @ 11:21AM, DAVIS And JONES walked the XB unit And stop by Plaintiff's cubical with An attempted to intimidate Plaintiff-when JONES Asked DAVIS "what's the plan?"

52. That, DAVIS acted and practiced an insidious form of racial epithet when he signed and posted a memorandum with racial slogan of "lets make XB great again". See Exhibit-I

53 Upon information and belief, the SDNY issued an ORDER dated Feb. 25, 2021, such was withheld by DESHAWN DAVIS until MARCH 16, 2021 to harass, retaliate and interfere with Plaintiff's access to the courts.

54 On or about April 1st, 2019, DESHAWN DAVIS obstructed and intercepted Plaintiff's certified mail to the United States Supreme Court clerk with an attempt to harass, retaliate and denied Plaintiff access to the court.

55 Plaintiff is entitled to injunction relief where Plaintiff is likely to prevail on some if not all claims - Plaintiff is currently suffering irreparable harm (mentally) and he is currently being injured by the actions of the defendants misconduct and or being committed daily at the Federal Bureau of Prisons Beaumont complex.

VI    Relief continuation page 4-2

58    Plaintiff requests $25,000,000 (twenty five million dollars) as compensatory damages

59    Plaintiff would like to be compensated for his pain and suffering damages in the amount of $15,000,000 (fifteen million dollars)

60    Plaintiff also seeks an injunction relief to enjoin all defendants and their agents, privies, proxies, surrogates and alter-egos from any further violations of Plaintiff's rights.

D. If your answer is "yes", give the following information for every lawsuit in which warning was imposed. (If more than one, use another piece of paper and answer the same questions.)

1. Court that imposed warning (if federal, give the district and division): *Fifth Circuit Appeals Court*

2. Docket Number: *15-10410*

3. Approximate date warnings were imposed: *Feb. 5th, 2016*

Signed this ___*6th*___ day of ___*April*___, 20 *21*.
      (date)            (month)             (year)

_____

(Signature of each plaintiff)

**I DECLARE (OR CERTIFY, VERIFY OR STATE) UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

Executed on: *April 6, 2021*
           (Date)

_____

(Signature of each plaintiff)

**WARNING: The Plaintiff is hereby advised any false or deliberately misleading information provided in response to the following questions will result in the imposition of sanctions. The sanctions the Court may impose include, but are not limited to monetary sanctions and/or the dismissal of this action with prejudice.**

5

 *Information To Build On*

**Engineering • Consulting • Testing**

June 28, 2015

Federal Bureau of Prisons
South Central Regional Office
344 Marine Forces Drive
Grand Prairie, TX 75051
Phone: (972) 730-8885

Attention      Ray Melton Jr.
               Facilities Management Specialist

Re:    Limited Water Intrusion Inspection & Mold Assessment
       Federal Correctional Complex, Beaumont
       4550 Hebert Road,
       Beaumont, TX 77705
       PSI Project No. 05231032

Dear Mr. Melton Jr.:

In accordance with PSI Proposal Number 0523-154504 dated June 11, 2015, Professional Service Industries, Inc. (PSI) has performed a Limited Water Intrusion Inspection and Mold Assessment at the above referenced property. Please find two (2) copies of the final report enclosed.

Thank you for choosing PSI as your consultant for this project. If you have any questions, or if we can be of additional service, please call us at (713) 224-2047.

Respectfully submitted,

PROFESSIONAL SERVICE INDUSTRIES, INC.

*Karen Smith*
for

Emem Abia, LEED AP
Environmental Project Manager
Mold Assessment Consultant MAC1047

Enclosures

*Exhibit - A*

# TABLE OF CONTENTS

1.  EXECUTIVE SUMMARY ............................................................................................2
2.  INTRODUCTION..................................................................................................5
    2.1  AUTHORIZATION .....................................................................................5
    2.2  SITE DESCRIPTION...................................................................................6
    2.3  PROJECT BACKGROUND..........................................................................6
    2.4  PURPOSE AND SCOPE..............................................................................6
3.  ASSESSMENT ACTIVITIES ...................................................................................7
    3.1  WALK-THROUGH EVALUATION.................................................................7
    3.2  INTERVIEW ............................................................................................7
    3.3  MOISTURE OBSERVATIONS AND MEASUREMENTS .....................................7
    3.4  TEMPERATURE AND RELATIVE HUMIDITY MEASUREMENTS .......................7
    3.5  HVAC OBSERVATIONS ...........................................................................8
    3.6  DOCUMENT REVIEW ...............................................................................8
    3.7  FUNGAL SAMPLING/OTHER MEASUREMENTS ...........................................8
4.  CONCLUSIONS AND RECOMMENDATIONS ............................................................10
    4.1  CONCLUSIONS......................................................................................10
    4.2  RECOMMENDATIONS .............................................................................10
5.  WARRANTY .......................................................................................................12
    5.1  WATER INTRUSION ASSESSMENT ...........................................................12
    5.2  USE BY THIRD PARTIES..........................................................................12
    5.3  UNIDENTIFIABLE CONDITIONS ................................................................13

## LIST OF FIGURES & APPENDICES

FIGURE 1:  APPROXIMATE VISIBLE MOLD & ELEVATED MOISTURE LOCATION DIAGRAM
FIGURE 2:  APPROXIMATE SPORE TRAP & TAPE-LIFT SAMPLE LOCATION DIAGRAM
APPENDIX A:  LABORATORY RESULTS / CHAIN-OF-CUSTODY REPORTS
APPENDIX B:  PHOTOGRAPHS
APPENDIX C:  APPLICABLE LICENSES AND CERTIFICATIONS



i

# LIMITED WATER INTRUSION INSPECTION
# &
# MOLD ASSESSMENT REPORT

For

BEAUMONT FEDERAL CORRECTIONAL COMPLEX
4550 HEBERT ROAD
BEAUMONT, TEXAS 77705

Prepared for

FEDERAL BUREAU OF PRISONS
SOUTH CENTRAL REGIONAL OFFICE
344 MARINE FORCES DRIVE
GRAND PRAIRIE, TEXAS 75051

Prepared by

Professional Service Industries, Inc.
3730 Dacoma Street
Houston, Texas 77092
Telephone (713) 224-2047

PSI PROJECT NO. 05231032

June 28, 2015

Randal G. Weber
Senior Regional Scientist
Principal Consultant

# 1. EXECUTIVE SUMMARY

Professional Service Industries, Inc. (PSI) conducted a Limited Water Intrusion Impact and Mold Assessment at the Beaumont Federal Correctional Complex Building located at 4550 Hebert Road in Beaumont, Texas. The subject site consists predominately of one-story building reportedly constructed in the 1990s. It is PSI's understanding that the water intrusion resulted from roof leaks, standing water, and clogging of the drainage system.

This survey was conducted at the request of Ray Melton, Jr. with the Federal Bureau of Prisons to evaluate conditions within the Correctional facility regarding water intrusion and moisture damage to building materials.

The scope of the assessment was designed to assess through visual inspection, baseline sampling, and moisture monitoring, any evidence of visible mold or conditions conducive to mold growth, odors, visible water damage, or stained building materials.

The visual assessment was conducted on June 15, 2015 by Greg Lall. Mr. Lall is a State of Texas licensed Mold Assessment Consultant (License No. 0239). PSI surveyed the interior portions of the building with the use of a hand held Delmhorst BD-2100 moisture meter. The inspection did reveal elevated percentages of moisture of up to 20% on building materials. The elevated/wet levels were noted in the Food Storage Warehouse, Foyer area, Kitchen, Bakery, Dining Room, and Mechanical Room as shown in Figure 1. PSI also observed moisture staining on building materials. Visible mold was evident in the Food Storage Warehouse, Foyer, Kitchen, Meat Prep Shop, and Mechanical Room. Visible mold was evident on the various building materials including heating, ventilating, and air conditioning (HVAC) duct insulation wrap and registers; corrugated metal roof deck; support beams; CMU block walls; gypsum board walls; electrical conduit, mechanical equipment; gypsum board ceilings.

A total of six (6) ambient spore trap samples, including five (5) air samples within the interior spaces and one (1) outside the building, were collected using Allergenco spore trap cassettes. Four (4) tape-lift surface samples were collected from the Food Service Warehouse, Bakery, Kitchen, Dining Room, and Facilities office.

All applicable samples were submitted via chain-of-custody to J3 Resources, Inc. (J3) laboratory in Houston, Texas. J3 is a Microbiological Laboratory accredited by the American Industrial Hygiene Association (AIHA) (LAB #0132). Airborne samples were analyzed for the presence of total fungal spores by quantitative direct examination. Results indicated the presence of various fungal spores including *Cladosporium*, *Penicillium/Aspergillus-like* and *Stachybotrys*. Based on the results of the analytical evaluation of air samples collected within the work area, PSI concludes that the indoor spore counts are higher when compared to the outdoor samples. In addition, some spore types detected indoors were not detected outdoors.



The American Society of Heating, Refrigerating and Air-Conditioning Engineers (ASHRAE) provides guidance on comfort ranges for temperature depending on season. These numbers generally range from 68 to 76 degrees Fahrenheit (F) during the winter months and from 72 to 80 degrees (F) during the summer months. The ranges are dependent on available humidity with the lower end of the temperature range coinciding with the higher humidity levels. The temperature readings ranged from 49.7 to 77.9 degrees Fahrenheit. Temperature readings were below generally accepted levels, with the colder temperatures recorded in cold storage and freezer areas. ASHRAE recommends maintaining the humidity between 30 and 70%, ideally between 40 and 60%. The relative humidity levels within the affected areas were above generally accepted levels. They ranged between 61.7 to 65.8 percent (%).

Based on the methodologies described in this report, this assessment observed and/or concluded the following for the correctional facility:

- Visible mold of more than twenty-five (25) contiguous square feet on the gypsum board walls and ceilings, support beams, CMU block walls, corrugated metal roof deck, and conduit in the Food Storage Warehouse and Foyer Area, Kitchen, Meat prep Shop, Mechanical Room, and Foyer area;
- Evidence of moisture/elevated readings of up to 20% on building materials in the Foyer area, Kitchen, Bakery, and Mechanical Room;
- Moisture staining on building materials;
- Temperature readings were not within the generally acceptable levels;
- Elevated relative humidity levels;
- Make up air units at the roof are not functional, and have been sealed off;
- Evidence of standing water in the Kitchen and Mechanical Room;
- Airborne testing demonstrated significant amplification of mold spores, including *Penicillium/Aspergillus-like* in Food Service Warehouse, Kitchen, Bakery, and Dining Room and *Stachybotrys* in the Kitchen by Eyewash Station; and
- Tape-lift testing results identified the presence of *Cladosporium, Penicillium/Aspergillus-like* and *Stachybotrys* on the HVAC in the Food Service Warehouse, Gypsum board in the Kitchen and duct board inside duct at the Mechanical Room.

PSI provides the following recommendations:

- All visible moisture and mold impacted HVAC duct insulation should be cleaned or removed. Since the amount of visual mold impacted materials is greater than twenty-five (25) contiguous square feet, State of Texas licensed personnel will be required for remediation.
- A mold protocol will be required for the remediation effort.
- Remediation of moisture-impacted building materials.



Limited Water Intrusion Impact & Mold Assessment
Beaumont Federal Correctional Complex
4550 Hebert Road
Beaumont, Texas 77705
PSI Project Number 05231032

- Due to the fluctuation in temperature readings and relative humidity, thorough investigation of the HVAC system to ensure that all settings are appropriate for the facility.
- Immediate response action to standing water, condensation issues, water intrusion, roof leaks that may occur in the future.
- Fix leaky plumbing and any other leaks in the building as soon as possible, regardless of the size and quantity of the leaks.
- Periodically inspect for condensation and wet spots and promptly fix the source(s) of moisture related problem(s).
- Schedule and perform regular building inspections and maintenance. This is to verify no continuing or new source(s) of moisture are present which could contribute to mold growth.



Limited Water Intrusion Impact & Mold Assessment
Beaumont Federal Correctional Complex
4550 Hebert Road
Beaumont, Texas 77705
PSI Project Number 05231032

## 2.    INTRODUCTION

A Limited Water Intrusion and Mold Assessment of the Federal Correctional Complex building located at 4550 Hebert Road in Beaumont, Texas has been conducted by PSI to investigate water intrusion issues leading to damaged building materials. The assessment was conducted on June 15, 2015 by Greg Lall.

The assessment was generally conducted as follows:

- Walk Through/Visual Evaluation — A visual evaluation was conducted to identify water damaged building materials and fungal growth that reportedly affected the building via roof leaks, plumbing leaks, and condensation.

- Interviews — Interviews with the maintenance personnel of the correctional facility was conducted to gather information on general environmental and indoor atmosphere conditions.

- Moisture Observation and Measurements — A resistance moisture meter was used to determine the moisture content of building materials observed within the designated areas as being potentially impacted by water. The LEDs on the meter are a visual aid to help quickly determine the moisture level that each reading indicates. Readings that activate the green light (0 to 0.5%) indicate a sufficiently dry moisture level, those that activate the yellow light (0.5 to 1%) indicate a borderline situation, and those that activate the red light (> 1%) indicate material that is too wet for painting or wallpaper. Collected data was used to determine its present condition and the extent of saturation of the building material.

- Document Review — PSI was not provided with any previous report or documentations.

- Fungal Sampling — Spore trap type air monitoring samples were collected using Allergenco spore trap cassettes. Surface tape-lift samples were collected in areas that were visually observed to have or exhibit potential signs of fungal growth.

### 2.1    AUTHORIZATION

Authorization to perform the assessment was given by PSI Proposal Number 0523-154504, between the Federal Bureau of Prisons and PSI, dated June 11, 2015. Access to the site was provided by Mr. Melton, Jr.



5     Limited Water Intrusion Impact & Mold Assessment
Beaumont Federal Correctional Complex
4550 Hebert Road
Beaumont, Texas 77705
PSI Project Number 0523|032

## 2.2   SITE DESCRIPTION

The subject building upon which this assessment was conducted is a single story building of approximately 30,000 square feet of floor space located at 4550 Hebert Road in Beaumont, Texas.  The building is reportedly constructed in the 1990's.  The exterior and interior walls consist of brick veneer and gypsum wallboard, respectively. Ceiling finishes consist primarily of gypsum board.  The floors were predominantly ceramic tile and concrete.

## 2.3   PROJECT BACKGROUND

This assessment and testing was conducted at the request of Mr. Melton on the basis of water damage and visible mold growth on building materials from numerous roof leaks, standing water, and blocked floor drains.

## 2.4   PURPOSE AND SCOPE

The scope of the assessment was intended to evaluate through visual inspection, baseline sampling, and moisture monitoring, any evidence of visible mold or conditions conducive to mold growth, odors, visible water damage, or stained building materials.



Limited Water Intrusion Impact & Mold Assessment
Beaumont Federal Correctional Complex
4550 Hebert Road
Beaumont, Texas 77705
PSI Project Number 05231032

## 3.    ASSESSMENT ACTIVITIES

Field investigation and sampling activities was conducted on June 15, 2015 by Mr. Lall, a TDSHS licensed Mold Assessment Consultant (License No. MAC0239). Prior to the commencement of the assessment activities, the South Central Regional Office of the Federal Bureau of Prisons provided site contact information and assisted in providing access to the building.

### 3.1    WALK-THROUGH EVALUATION

PSI was accompanied by Mr. Melton, Jr with the Federal Bureau of Prisons. PSI observed visible mold greater than 25 contiguous square feet on the roof deck, beams and walls in the Food Service Warehouse; evidence of moisture/elevated readings of up to 20% on building materials in the Food Service Warehouse, Meat Prep Shop, and Kitchen; and moisture staining on building materials.

### 3.2    INTERVIEW

Mr. Melton provided the information regarding the historical building usage, and moisture stains from several roof leaks.

### 3.3    MOISTURE OBSERVATIONS AND MEASUREMENTS

The moisture content of the building materials were measured with the help of a Delmhorst BD-2100 moisture meter. Appropriate moisture readings were taken from building materials within the building and measurements were generally in the range of 0.1% to 20% (percent). Figure 1 shows the approximate elevated moisture locations. Moisture stained suspended ceiling tiles and wallboard systems were observed.

### 3.4    TEMPERATURE AND RELATIVE HUMIDITY MEASUREMENTS

Measurements were collected for temperature and relative humidity in the facility. Affected areas were investigated using Extech Humidity/Temperature Pen 445580.

Temperature

Measurement and recording of the air temperature is used to determine comfort level parameters associated with the indoor environment. The monitoring device was placed in each area and allowed to record measurements for an extended period of time. ASHRAE provides guidance on comfort ranges for temperature depending on season. These numbers generally range from 68 to 76 degrees Fahrenheit (F) during the winter months and from 72 to 80 degrees (F) during the summer months. The ranges are dependent on available humidity with the lower end of the temperature range coinciding with the higher humidities.

The temperature within the correctional facility ranged from 49.7 to 77.9 degrees Fahrenheit. Temperature readings were below generally accepted levels in the Dining Room.



Relative Humidity

Measurement and recording of the relative humidity is used to indicate comfort level parameters associated with the indoor air. Overly dry as well as overly humid conditions are both indicators of air quality provided by the HVAC system. High humidity levels can cause concern regarding the potential for growth of fungi within the facility. The monitoring device was placed in each area and allowed to record measurements for an extended period of time. ASHRAE recommends maintaining the humidity between 30 and 70%, ideally between 40 and 60%.

The relative humidity levels within the correctional facility were above these generally accepted levels in the Food Service Warehouse, the Kitchen, and Bakery. They ranged between 61.7 to 65.8 percent (%).

## 3.5  HVAC OBSERVATIONS

At the time of PSI's site visit, the coil in one of the HVAC units was reportedly blocked with debris, and corrosion. New coils have been ordered but, unit is not operating effectively.

## 3.6  DOCUMENT REVIEW

PSI was not provided with any historical data, maintenance records, previous assessment reports, operation logs or other documents for their potential effect on water intrusion within the facility.

## 3.7  FUNGAL SAMPLING/OTHER MEASUREMENTS

Six (6) air samples were collected from the Food Service Warehouse, Bakery, Kitchen by the Eyewash Station, Dining Room (Serving Area, and Entry Door Area), and Exterior. (See Figure 2) using Allergenco spore trap cassettes. The Allergenco spore trap was connected to a sampling pump calibrated to flow at 15 liters for approximately 5-10 minutes for a total sample volume of 120-150 liters. One (1) outdoor sample was also collected for comparison purposes.

All microbial samples were submitted via chain-of-custody and analyzed by J3. The laboratory successfully participates in the American Industrial Hygienists Association (AIHA), Environmental Microbiology Proficiency Analytical Testing Program (EMPAT) which measures the laboratory's proficiency in analyzing environmental microbiological samples. EMPAT is specifically for labs identifying microorganisms commonly detected in air, fluids, and surface samples during fungal studies. EMPAT is a triennial performance based testing program. Samples may contain both pure and mixed cultures of fungi or bacteria. Laboratories participate to assess and improve their analytical skills. Proficiency in EMPAT is mandatory for labs seeking EMLAP accreditation. J3 is a licensed as a Mold Analysis Laboratory (LAB #0132) and EMLAP accreditation Laboratory ID 157714.



Results of the airborne spore trap laboratory analyses indicated the presence of significant amplification of fungal spores including *Penicillium/Aspergillus*-like in the Food Service Warehouse, Kitchen, Bakery, and Dining Room; and *Stachybotrys* in the Kitchen by Eyewash Station.

In addition, the tape-lift analysis identified the presence of *Cladosporium*, *Penicillium/Aspergillus-like* and *Stachybotrys* spores on the HVAC components in the Food Service Warehouse, gypsum board ceiling in the Kitchen and duct board inside duct at the Mechanical Room.



# 4. CONCLUSIONS AND RECOMMENDATIONS

PSI has performed a Limited Water Intrusion Impact and Mold Assessment at the subject site in general accordance with PSI Proposal Number 0523-154504. Based on the results of this assessment, the following conclusions and recommendations have been developed.

## 4.1   CONCLUSIONS

Based on the methodologies described in this report, this assessment concludes the following for the impacted areas in the correctional facility:

- Visible mold of more than twenty-five (25) contiguous square feet on the walls, support beams, CMU block walls, corrugated metal roof deck, and conduit in the Food Storage Warehouse and Foyer Area, Kitchen, Meat prep Shop, Mechanical Room, and Foyer area;
- Evidence of moisture/elevated readings of up to 20% on building materials in the Foyer area, Kitchen, Bakery, and Mechanical Room;
- Moisture staining on building materials;
- Temperature readings were not within the generally acceptable levels;
- Elevated relative humidity levels;
- Make up air units at the roof are not functional, and have been sealed off;
- Evidence of standing water in the Kitchen and Mechanical Room;
- Airborne testing demonstrated significant amplification of mold spores, including *Penicillium/Aspergillus-like*, in Food Service Warehouse, Kitchen, Bakery, and Dining Room and *Stachybotrys* in the Kitchen by Eyewash Station; and
- Tape-lift testing results identified the presence of *Cladosporium*, *Penicillium/Aspergillus-like* and *Stachybotrys* on the HVAC in the Food Service Warehouse, Gypsum board in the Kitchen and duct board inside duct at the Mechanical Room.

## 4.2   RECOMMENDATIONS

PSI recommends the following:

- All visible moisture and mold impacted HVAC duct insulation should be cleaned or removed. Since the amount of visual mold impacted materials is greater than twenty-five (25) contiguous square feet, State of Texas licensed personnel will be required for remediation.
- A mold protocol will be required for the remediation effort.
- Remediation of moisture-impacted building materials.



10    Limited Water Intrusion Impact & Mold Assessment
Beaumont Federal Correctional Complex
4550 Hebert Road
Beaumont, Texas 77705
PSI Project Number 05231032

- Due to the fluctuation in temperature readings and relative humidity, thorough investigation of the HVAC system to ensure that all settings are appropriate for the facility.
- Immediate response action to standing water, condensation issues, water intrusion, roof leaks that may occur in the future.
- Fix leaky plumbing and any other leaks in the building as soon as possible, regardless of the size and quantity of the leaks.
- Periodically inspect for condensation and wet spots and promptly fix the source(s) of moisture related problem(s).

Schedule and perform regular building inspections and maintenance. This is to verify no continuing or new source(s) of moisture are present which could contribute to mold growth.



# 5. WARRANTY

### 5.1  WATER INTRUSION ASSESSMENT

The field observations, measurements, and research reported herein are considered sufficient in detail and scope to form a reasonable basis for a Limited Water Intrusion Impact and Mold Assessment of this facility. The assessment, conclusions, and recommendations presented herein are based upon the subjective evaluation of limited data. They may not represent all conditions at the subject site as they reflect the information gathered from specific locations. PSI warrants that the findings and conclusions contained herein have been promulgated in accordance with generally accepted industrial hygiene methodology and only for the site described in this report.

PSI warrants that the findings contained herein have been prepared with the level of care and skill ordinarily exercised by professionals practicing in the community. The scope of work addressed readily accessible and exposed interior building areas. Observation or sampling of inaccessible areas such as behind walls or within ductwork was not performed. PSI's investigation did address determining the probable source of moisture intrusion into the structure.

As directed by the client, PSI did not provide any service to investigate or detect the presence of mold or other biological contaminates in or around any structure, or any service that was designed or intended to prevent or lower the risk of the occurrence of the amplification of the same. Client acknowledges that mold is ubiquitous to the environment with mold amplification occurring when building materials are impacted by moisture. Client further acknowledges that site conditions are outside of PSI's control, and that mold amplification will likely occur, or continue to occur, in the presence of moisture. As such, PSI cannot and shall not be held responsible for the recurrence of mold amplification.

No other warranties are implied or expressed.

### 5.2  USE BY THIRD PARTIES

This report was prepared pursuant to the contract PSI has with Federal Bureau of Prisons. That contractual relationship included an exchange of information about the subject site that was unique and between PSI and its client and serves as the basis upon which this report was prepared. Because of the importance of the communication between PSI and its client, reliance or any use of this report by anyone other than Federal Bureau of Prisons, for whom it was prepared, is prohibited and therefore not foreseeable to PSI.

Reliance or use by any such third party without explicit authorization in the report does not make said third party a third party beneficiary to PSI's contract with Federal Bureau of Prisons. Any such unauthorized reliance on or use of this report, including any of its information or conclusions, will be at third party's risk. For the same reasons, no



warranties or representations, expressed or implied in this report, are made to any such third party.

## 5.3    UNIDENTIFIABLE CONDITIONS

This report is necessarily limited to the conditions observed and to the information available at the time of the work. Due to the nature of the work, there is a possibility that there may exist conditions which could not be identified within the scope of work or which were not apparent at the time of our site work. This report is also limited to information available from the client at the time it was conducted. The report may not represent all conditions at the subject site as it only reflects the information gathered from specific locations.



Federal Correctional Complex, Beaumont
4550 Hebert Road
Beaumont, TX 77705
Project No.: 05231032



1.  View of visible mold growth on register.



2.  View of visible mold growth on the corrugated metal roof deck.

Federal Correctional Complex, Beaumont
4550 Hebert Road
Beaumont, TX 77705
Project No.: 05231032



3.  View of visible mold growth on CMU block wall/air vent in the food service warehouse.



4.  View of visible mold growth on warehouse walls & duct.

Federal Correctional Complex, Beaumont
4550 Hebert Road
Beaumont, TX 77705
Project No.: 05231032



5. View of mold growth on ductwork, piping and gypsum board and CMU walls at freezer door area in the food service warehouse.



6. View of standing water in mechanical room.

Federal Correctional Complex, Beaumont
4550 Hebert Road
Beaumont, TX 77705
Project No.: 05231032



7. View of visible mold growth and moisture damage on ceiling in the kitchen area.



8. View of mold and moisture caused corrosion on HVAC register on duct in mechanical room.



## J3 Resources, Inc.
6110 W. 34th Street, Houston, Texas 77092
Phone: (713) 290-0221  Fax: (713) 290-0248
j3resources.com

## Spore Trap Report - Total Airborne Fungal Spores

Attn:  Emem Abia
PSI, Inc.
3730 Dacoma St
Houston, TX 77092

J3 Order #:      JH1565341
Receipt Date:   17-Jun-2015
Analysis Date:  22-Jun-2015
Report Date:    22-Jun-2015

### FCC-MED

| Sample Number | S-01 | | | S-02 | | | S-03 | | |
|---|---|---|---|---|---|---|---|---|---|
| Location | Food Suc. Whse. | | | Bakery | | | Kitchen- by Eyewash Station | | |
| Volume (liters) | 120 | | | 120 | | | 150 | | |
| Debris Rank (0-5) | 3 | | | 4 | | | 3 | | |
| Limit of Detection (Particles / m³) | 8 | | | 8 | | | 7 | | |
| Total Fungal Count (Spores / m³) | 38000 | | | 3380 | | | 11600 | | |
| **INDIVIDUAL FUNGAL SPORE DETAIL** | Raw Count | Spores / m³ | % | Raw Count | Spores / m³ | % | Raw Count | Spores / m³ | % |
| Alternaria | | | | | | | | | |
| Ascospores | 14 | 170 | < 1 | 228 | 1900 | 56 | 643 | 4290 | 37 |
| Basidiospores | 20 | 167 | < 1 | 41 | 342 | 10 | 66 | 440 | 4 |
| Bipolaris/Drechslera-like | | | | | | | 1 | 7 | < 1 |
| Cercospora-like | | | | | | | | | |
| Chaetomium | | | | | | | | | |
| Cladosporium | 357 | 2980 | 8 | 40 | 333 | 10 | 114 | 760 | 7 |
| Curvularia | 1 | 8 | < 1 | 1 | 8 | < 1 | | | |
| Epicoccum | | | | | | | | | |
| Fusarium | | | | | | | | | |
| Memnoniella | | | | | | | | | |
| Nigrospora | | | | | | | 2 | 13 | < 1 |
| Oidium/Erysiphe | | | | | | | | | |
| Penicillium/Aspergillus-like | 4165 | 34700 | 91 | 93 | 775 | 23 | 906 | 6040 | 52 |
| Peronospora | | | | | | | | | |
| Pithomyces/Ulocladium | 1 | 8 | < 1 | 3 | 25 | < 1 | 2 | | < 1 |
| Rust/Smuts/Myxomycetes/Perconia | | | | | | | | | |
| Spegazzinia | | | | | | | | | |
| Stachybotrys | | | | | | | 3 | 20 | < 1 |
| Tetraploa | 1 | | < 1 | | | | | | |
| Torula | | | | | | | | | |
| Unidentified Spores | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| **Totals** | 4559 | 38000 | 100 | 406 | 3680 | 100 | 1737 | 11600 | 100 |
| **MISCELLANEOUS PARTICLES DETAIL** | Raw Count | Particles / m³ | | Raw Count | Particles / m³ | | Raw Count | Particles / m³ | |
| Hyphal Fragments | | | | | | | | | |
| Pollen | | | | | | | 2 | 13 | |

Scott M. Ward, Ph.D.    Analyst

Lee Poye        QA Officer

These results relate only to the sample submitted. Samples were received in acceptable condition unless stated otherwise on this report. This laboratory is not responsible for total particulate/spore concentrations which are dependent on volume collected by non-laboratory personnel. Samples are analyzed according to J3 SOP# 7-03-2, which includes a 100% scan of the trace at 400X magnification and a minimum of 20% of the trace counted at 600X magnification. Debris rank is an indication of non-biological particulates present on the trace and is graded on a scale of 0-5, with 5 indicating the most debris. High debris rankings (4+) may obscure small spores and/or prevent the adherence of airborne particulates/spores. Fungal counts on samples with high debris rankings should be regarded as minimal with actual counts being higher than reported. Blank corrections are not applied to data unless requested by the customer. There is no current data supporting a critical or threshold exposure limit to fungal aeroallergens. To date, occupational health related organizations, such as OSHA and NIOSH, have not established Permissible Exposure Limits, Recommended Action Levels, or other limit values for aeroallergens. LOD = Limit of Detection

TDSHS Mold License LAB0132          AIHA EMLAP #157714                    Page 1 of 2

**J3 Resources, Inc.**
6110 W. 34th Street, Houston, Texas 77092
Phone: (713) 290-0221  Fax: (713) 290-0248
j3resources.com



## Spore Trap Report - Total Airborne Fungal Spores

Attn:  Emem Abia
FSI, Inc.
3730 Dacoma St
Houston, TX  77092

J3 Order #:       JH1565341
Receipt Date:    17-Jun-2015
Analysis Date:   22-Jun-2015
Report Date:     22-Jun-2015

### FCC-MED

| Sample Number | S-04 | | | S-05 | | | S-06 | | |
|---|---|---|---|---|---|---|---|---|---|
| Location | Dining Rm- Serving Area | | | Dining Rm.- Entry Door Area | | | Exterior- Facilities Office | | |
| Volume (liters) | 120 | | | 120 | | | 150 | | |
| Debris Rank (1-5) | 3 | | | 3 | | | 3 | | |
| Limit of Detection (Particles / m³) | 8 | | | 8 | | | 7 | | |
| Total Fungal Count (Spores /m³) | 1420 | | | 1890 | | | 6380 | | |
| INDIVIDUAL FUNGAL SPORE DETAIL | | | | | | | | | |
| | Raw Count | Spores/m³ | % | Raw Count | Spores/m³ | % | Raw Count | Spores/m³ | % |
| Alternaria | | | | | | | | | |
| Ascospores | 83 | 692 | 49 | 79 | 658 | 36 | 618 | 4120 | 65 |
| Basidiospores | 27 | 225 | 16 | 31 | 258 | 14 | 210 | 1400 | 22 |
| Bipolaris/Drechslera-like | | | | | | | | | |
| Cercospora-like | | | | | | | 1 | 7 | < 1 |
| Chaetomium | | | | | | | | | |
| Cladosporium | 9 | 75 | 5 | 62 | 517 | 28 | 47 | 313 | 5 |
| Curvularia | | | | | | | 5 | 33 | < 1 |
| Epicoccum | | | | | | | 1 | 7 | < 1 |
| Fusarium | | | | | | | | | |
| Memnoniella | | | | | | | | | |
| Nigrospora | | | | | | | 2 | 13 | < 1 |
| Oidium/Erysiphe | | | | | | | | | |
| Penicillium/Aspergillus-like | 48 | 400 | 28 | 48 | 400 | 22 | 70 | 467 | 7 |
| Peronospora | | | | | | | | | |
| Pithomyces/Ulocladium | 3 | 25 | 2 | | | | 2 | 13 | < 1 |
| Rust/Smuts/Myxomycetes/Perconia | | | | | | | 1 | 7 | < 1 |
| Spegazzinia | | | | | | | | | |
| Stachybotrys | | | | | | | | | |
| Tetraploa | | | | | | | | | |
| Torula | | | | | | | | | |
| Unidentified Spores | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| Totals | 170 | 1420 | 100 | 220 | 1890 | 100 | 1957 | 6380 | 100 |
| MISCELLANEOUS PARTICLES DETAIL | | | | | | | | | |
| | Raw Count | Particles / m³ | | Raw Count | Particles / m³ | | Raw Count | Particles / m³ | |
| Hyphal Fragments | | | | | | | | | |
| Pollen | | | | 3 | 25 | | 5 | 33 | |

Scott M. Ward, Ph.D.     Analyst

Lee Poye          QA Officer

These results relate only to the sample submitted. Samples were received in acceptable condition unless stated otherwise on this report. This laboratory is not responsible for total particulate/spore concentrations which are dependent on volume collected by non-laboratory personnel. Samples are analyzed according to J3 SOP# 7-03-2, which includes a 100% scan of the trace at 400X magnification and a minimum of 20% of the trace counted at 600X magnification. Debris rank is an indication of non-biological particulates present on the trace and is graded on a scale of 0-5, with 5 indicating the most debris. High debris rankings (4+) may obscure small spores and/or prevent the adherence of airborne particulates/spores. Fungal counts on samples with high debris rankings should be regarded as minimal with actual counts being higher than reported. Blank corrections are not applied to data unless requested by the customer. There is no current data supporting a critical or threshold exposure limit to fungal aeroallergens. To date, occupational health related organizations, such as OSHA and NIOSH, have not established Permissible Exposure Limits, Recommended Action Levels, or other limit values for aeroallergens. LOD = Limit of Detection

TDSHS Mold License LAB0132.              AIHA EMLAP #157714                              Page 2 of 2

# ENVIRONMENTAL MICROBIOLOGY CHAIN OF CUSTODY

**J3 resources, inc.**

.3 3/6.2 L/10/uss

| Submitter Name: | Bill to: |
|---|---|
| Company: PSI | Address: |
| Address: 3730 DACOMA ST | |
| | City/State:               Zip: |
| City/State: HOUSTON     Zip: 77092 | PO #: |

### Project Information

| Project Name: FCC - MED | Project Manager: |
|---|---|
| Project #: 05231032 | Notification By:  Email: ☐   Verbal: ☐   Text: ☐ |
| Email Report To: EMEM ABIA | Email Invoice To: |

Special Instructions:

### Turnaround Times - Please Select One

| Emergency* ☐ | 1 Day ☐ | 2 Day ☐ | 3 Day ☑ | 5 Day ☐ |
|---|---|---|---|---|

### MOLD

| Air Samples, Non-Culturable | Surface Samples, Non Culturable | Air & Surface Samples, Culturable |
|---|---|---|
| ☑ Spore Trap Analysis (Air-O-Cell, Allergenco D) | ☑ Direct Exam  ☑ Tape/Swab  ☐ Bulk/Dust | ☐ Culture Plates (with Genius ID and Abundance) |

### BACTERIA

| AIR | SURFACE/WATER |
|---|---|
| ☐ Total Count (TSA – TOTAL CFU's)<br>☐ Gram Negative Count (Maconkey – Total CFU's)<br>☐ Total & Gram Negative Count<br>☐ Gram Stains and Counts | ☐ Total Count (TSA – TOTAL CFU's) |

### SAMPLE INFORMATION

| SAMPLE NUMBER | SAMPLE LOCATION / MATERIAL | VOLUME |
|---|---|---|
| SW - 01 | FOOD SVC, WHSE - REGISTER - HVAC | |
| SW - 02 | "     "     " - INSIDE DUCT | |
| SW - 03 | KITCHEN - CEILING - GYPSUM BOARD | |
| SW - 04 | DUCT BOARD INSIDE DUCT AT MECH. RM. | |
| SW - 05 | | |

### Signatures

| Relinquished By: | Date: 6-17-15   Time: 1325 |
|---|---|
| Received By: | Date: 6/17/15   Time: 13:08 |

* Emergency TAT requires prior lab notification. All samples analyzed outside normal business hours are charged at Emergency rate.

J3 Resources, Inc. ◆ 6110 West 34th Street ◆ Houston, Texas 77092 ◆ tel: 713/290-0221 ◆ fax: 713/290-0248

## J3 Resources, Inc.
6110 W. 34th Street, Houston, Texas 77092
Phone: (713) 290-0221 – Fax: (713) 290-0248
j3resources.com



## Qualitative Fungal Spore Investigation of Bulk Samples

Attn:    Emem Abia
PSI, Inc.
3730 Dacoma St.
Houston, TX 77092

J3 Order #:     JH1565341
Receipt Date:    17-Jun-2015
Analysis Date:   22-Jun-2015
Report Date:     22-Jun-2015

### FCC-MED

| Sample ID | Material Description | Media Type | Fungal Spores Identified | Relative Abundance |
|-----------|---------------------|------------|--------------------------|--------------------|
| SW-01 | Food Svc. Whse- Register -HVAC | Tape | Cladosporium | High |
| SW-02 | Food SVC. Whse- Inside Duct | Tape | Cladosporium | Low |
| SW-03 | Kitchen- Ceiling -Gypsum Board | Tape | Penicillium/Aspergillus-like<br>Stachybotrys | High<br>High |
| SW-04 | Duct Board Inside Duct at Mech. Rm. | Tape | Penicillium/Aspergillus-like | High |

Scott M. Ward, Ph.D.       Analyst

Lee Poye                   QA Officer

These results relate only to the sample(s) submitted. This report is for the exclusive use of the addressed client and shall not be reproduced except in full without written approval by J3 Resources Inc. Samples were received in acceptable condition unless stated otherwise on this report. Samples are analyzed according to J3 SOP 7-03-3, which is solely qualitative; indications of relative abundance are based solely on a visual estimation of the sample submitted. A "Rare" designation implies a very low occurrence consistent with a random occurrence/background concentration. Penicillium/Aspergillus-like fungal spores references spherical, morphologically indistinguishable 2-6μm spores. Only the top three fungal spores in relative abundance, unless noted otherwise, are reported. There is no current data supporting a critical or threshold exposure limit to fungal aeroallergens. Blank corrections are not applied to data unless requested by the customer. To date, occupational health related organizations, such as OSHA and NIOSH have not established Permissible Exposure Limits or Recommended Action Levels, or other limit values for aeroallergens.

TDSHS Mold License LAB0132          AIHA EMLAP #157714                                    Page 1 of 1

# IH CHAIN OF CUSTODY

Project Name/Number FCC~MED / 05231032                    Page  2  of  2

## SAMPLE IDENTIFICATION

| SAMPLE NUMBER | SAMPLE LOCATION/MATERIAL | VOLUME |
|---|---|---|
| S-01 | FOOD SVC. WHSE. | 120 ℓ |
| S-02 | BAKERY | 120 ℓ |
| S-03 | KITCHEN- BY EYEWASH STATION. | 150 ℓ |
| S-04 | DINING RM.~ SERVING AREA | 120 ℓ |
| S-05 | DINING RM.~ ENTRY DOOR AREA | 120 ℓ |
| S-06 | EXTERIOR- FACILITIES OFFICE | 150 ℓ |
|  |  |  |

Comments/Special Instructions:

J3 Resources, Inc.  ◦  6110 West 34th Street  ◦  Houston, Texas 77092  ◦  tel: 713/290-0221  ◦  fax: 713/290-0248



# TEXAS DEPARTMENT OF STATE HEALTH SERVICES

*Be it known that*

## PROFESSIONAL SERVICE INDUSTRIES INC

is licensed to perform as a

## Mold Analysis Laboratory

*in the State of Texas and is hereby governed by the rights, privileges, and responsibilities set forth in Title 25, Texas Administrative Code, Chapter 295, relating to Texas Mold Assessment and Remediation Rules, as long as this license is not suspended or revoked.*

David Lakey, M.D.
Commissioner of Health

License Number: LAB0145

Expiration Date: 1/14/2016

Control Number: 6484

(Void After Expiration Date)

VOID IF ALTERED     NON-TRANSFERABLE



# TEXAS DEPARTMENT OF STATE HEALTH SERVICES

*Be it known that*

## J3 RESOURCES INC

is licensed to perform as a

## Mold Analysis Laboratory

*in the State of Texas and is hereby governed by the rights, privileges, and responsibilities set forth in Title 25, Texas Administrative Code, Chapter 295, relating to Texas Mold Assessment and Remediation Rules, as long as this license is not suspended or revoked.*

David Lakey, M.D.
Commissioner of Health

License Number: LAB0132

Expiration Date: 12/2/2016

Control Number: 6512

(Void After Expiration Date)

VOID IF ALTERED      NON-TRANSFERABLE



### Texas Department of State Health Services

Asbestos Individual Consultant

GREGORY M LALL
License No. 105216
Control No. 96623
Expiration Date: 2/29/2016





### Texas Department of State Health Services

Mold Assessment Consultant

GREGORY M LALL
License No. MAC0239
Control No. 7969
Expiration Date: 1/11/2016





# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | MCLEAN, LENROY | | | Reg #: | 61524-054 |
| Date of Birth: | 05/04/1972 | Sex: | M    Race: BLACK | Facility: | BML |
| Encounter Date: | 02/06/2019 11:37 | Provider: | Henderson, S. NP | Unit: | Z03 |

Mid Level Provider - Evaluation encounter at Health Services.

**Reason Not Done:**   Refused

**Comments:** Inmate reports that he is having occasional headaches, irritated eyes, shortness of breath, and is coughing up clear mucus. No distress noted. VSS. LCTA. Inmate reports that he has come to medical with these symptoms and he was told it was a cold, but he knows that it is something else.

**Cosign Required:** No

Completed by Henderson, S. NP on 02/06/2019 11:38.

*Exhibit—B*



Attachment A

## DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons P1330.18, <u>Administrative Remedy Program</u>, (January 6, 2014), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance.

Inmate Name: <u>Lenroy Mclean</u>          Reg. No.: <u>61524-054</u>    Unit: <u>XB-11</u>

**Specific Complaint and Requested Relief:**
Mclean was giving an inhalation, because of his breathing problem and his not over weight. Mclean would like to request for medical to run more appropriate testes to determine, if he has come-in contact with any fungal spores (cladosporium, pencillium/aspergillus like stachybotrys), why a inhalation aerosol was presrcibed. Mclean continue to have respiratory problems...See P.S. 6031.04 Ch.7 A. See Exh. 1

**Efforts Made By Inmate To Informally Resolve Grievance (be specific):**
An email was sent to the warden via trulincs.

**Counselor's Comments:**

Exhibit-C

_____          _____
Correctional Counselor's Review / Date          Unit Manager's Review / Date

Exh. 1

TRULINCS 61524054 - MCLEAN, LENROY - Unit: BML-X-B

--------------------------------------------------------------------------------

FROM: 61524054
TO: Warden LOW
SUBJECT: ***Request to Staff*** MCLEAN, LENROY, Reg# 61524054, BML-X-B
DATE: 01/21/2019 07:49:15 AM

To: Warden Lewis
Inmate Work Assignment: elect

Mr. Lewis:

Some years ago.. maybe 2015 or 2016 there was a issue with mold and air quality at this facility.  I was told that a private contractor came in to check the mold and air quality...I have previously discussed getting the results because of my asthma... which I never had before I arrived at this institution (I wanted to see the results as provided for by policy) to see what was determined regarding the mold situation here and the air quality here (for example in the mornings the smell of Benzene is strong in the air when we go to breakfast)... to date I have not been provided the results.  Please provide me with a copy of the final report (was it posted on the Bulletin board pursuant to policy).

*Incident Report*
*#3233008*
*Evidence #1 of 7*

TRULINCS  61524054 - MCLEAN, LENROY - Unit: BML-Z-L

--------------------------------------------------------------------------------

FROM: 61524054
TO: Warden LOW
SUBJECT: ***Request to Staff*** MCLEAN, LENROY, Reg# 61524054, BML-X-B
DATE: 01/28/2019 06:31:51 AM

To: Lewis
Inmate Work Assignment: elect

I am requesting that you preserved the XB-unit CCTV footage of 1-27-19 @ approx. 4:35pm when the inmates cleaned the "Black-Mold" from the rear exit door and showed it to the unit officer that did nothing. Such should have been reported to his superior and documented, to have it address this morning. Because the air-condition (and windows screwed shut from the outside) was off this entire weekend and active the mold and fungus, what's intriguing warden Lewis, you know of the black mold and continue to  endanger inmates life's with this air being off. Attached hereto is my request from 1-21-19 @ 7:49am that you have been ignoring, warden Lewis I hope this contractor was not paid hush money to avoid not reporting the black-mold and fungus here at FCI-Beaumont Low, because the condition is really serious and bad, Beside that it would be fraud. Please don't let me get the O.I.G involved and an retribution for complaining about a health situation will be note. I will await your response, please I dont want to talk to no one. You response in written.
Thank you
-----MCLEAN, LENROY on 1/21/2019 7:49 AM wrote:

>

Mr. Lewis:

Some years ago.. maybe 2015 or 2016 there was a issue with mold and air quality at this facility.  I was told that a private contractor came in to check the mold and air quality...I have previously discussed getting the results because of my asthma... which I never had before I arrived at this institution (I wanted to see the results as provided for by policy) to see what was determined regarding the mold situation here and the air quality here (for example in the mornings the smell of Benzene is strong in the air when we go to breakfast)... to date I have not been provided the results.  Please provide me with a copy of the final report (was it posted on the Bulletin board pursuant to policy).

*Exhibit-D*

TRULINCS  61524054 - MCLEAN, LENROY - Unit: BMM-N-A

--------------------------------------------------------------------------------------------------------

FROM: 61524054
TO: Warden MED
SUBJECT: ***Request to Staff*** MCLEAN, LENROY, Reg# 61524054, BMM-N-A
DATE: 04/03/2021 03:07:09 PM

To: Barlet
Inmate Work Assignment: none

Good Day
        Attached hereto is an email sent to the mailroom (Strong & Davis) with the relevant numbers, apparently one of my certify legal mail sent on the 31st of March 2021 has not made it to the post office, I don't see how is that possible...I had my family checked on the phone and they were not able to locate one of these certified legal mail, warden Barlet this would be the second incident with my legal mail. I would like to request that you instruct your mailroom staff(s) to locate this particular piece of legal mail, because of its importance-I refuse to be in your prison and have to worry about whether or not my legal mails are been sent. The unit office reviewed both these certified legal mail before she placed them in the bag, between the unit officer and the mailroom this piece of legal mail grow legs and disappeared. I will await your expedite response given the importance of this particular legal mail.
Respectfully Submitted<br>/s/<br>Lenroy Mclean

-----MCLEAN, LENROY on 4/3/2021 2:02 PM wrote:

>

Please see attachment I would like to know the status on these mail please...Thank you
-----MCLEAN, LENROY on 4/3/2021 2:01 PM wrote:

>

I would like to inquire into the following certified mail sent through this department:
1) #7019 2280 0001 6170 6112
2) #7017 1450 0002 1221 5879
3) #7019 2280 0001 6170 4934
-----MCLEAN, LENROY on 3/26/2021 8:41 AM wrote:

>

I would like to request the status on this certify mail #7019 2280 0001 6170 6112 please

*Exhibit - E*

TRULINCS  61524054 - MCLEAN, LENROY - Unit: BMM-N-A

--------------------------------------------------------------------------------------------

FROM: 61524054
TO: Warden MED
SUBJECT: ***Request to Staff*** MCLEAN, LENROY, Reg# 61524054, BMM-N-A
DATE: 03/17/2021 12:55:39 PM

To: Barlet
Inmate Work Assignment: none

I received one of my several boxes of property shipped from my last facility, each box are labeled one of seven through seven of seven.  I received only one box (7 of 7) and was told that was the only one came, I have several case pending within the courts and have been in-transit for too long for only one box of my property to have arrived warden Barlet...I will be seeking a court order to retrieve the rest, has explained to the officer in R&D yesterday when he gave me the box and legal mail received by this administration dated back in Feb. 2021 with a date for reply by March 5, 2021. I was at your facility since Feb. 23rd, 2021 and that legal mail with the court's order was given to me yesterday (3-16-2021) with a deadline for March 5, 2021, I conferred with the counselor to make a legal call to my attorney-still waiting. I would like to request 1) the rest of my property without a fowl play; 2) a legal call to my attorney about this court order with a deadline I received yesterday and 3) I would like to request additional time in the law library given my ongoing cases pending within the courts, please. See attachment to R&D
Respectfully Submitted
-----MCLEAN, LENROY on 3/15/2021 2:09 PM wrote:

>

I would like to inquire, please. I have been in-transit since the 23rd of Feb. 2021 and have several cases pending in the courts, I need my property to obtain my case numbers in order to put  the courts on notice of my new address, please. Thank you

E-2

TO: Michael W. Lockhart
    U.S. Attorney's Office
    350 Magnolia ave ste 150
    Beaumont, Tx 77701

TO: Jason Sickles (SCRO)
    Regional Counsel
    344 Marine Forces Drive
    Gran Prairie, Tx 75051

FR: Lenroy Mclean 61524-054
    FCI-Beaumont-LOW
    P.O. Box 26020
    Beaumont, Tx 77720

RE: Section 1997e of the civil rights of institutionalized persons act.
    42 USC § 1997-1997j...cert# 70103090000333700325.

Good day Mr. Lockhart

With all due respect, to the above reference-I would like to request for your office to instruct warden Lewis to have his administration process my grievance(s) without incident, please. This situation has been ongoing-several grievances was (#974271-R1 & 974270-R1 etc.) filed to the regional director (28 CFR § 542.15) without any response.

I have done my due diligence with the warden's secretary, which was futile. I had even refiled these particular grievances with attachments of the warden's first responses back to the warden (28 CFR 542.14) and they was not process.

I am requesting for your office to intervene and instruct this warden to process my grievances refiled at his level and/or locate these missing grievances from the regional office without any incident.

Thanking you in advance for your time and consideration given.

Date: 6-30-19

Respectfully Submitted

Lenroy Mclean 61524-054

Exhibit-F

TRULINCS 61524054 - MCLEAN, LENROY - Unit: BML-X-B

---------------------------------------------------------------------------------

FROM: 61524054
TO: Captain LOW
SUBJECT: ***Request to Staff*** MCLEAN, LENROY, Reg# 61524054, BML-X-B
DATE: 06/30/2019 06:27:34 AM

To: Brasfield
Inmate Work Assignment: NONE

I was released from the SHU (6-26-18) and upon retrieving my property, a total of 2 boxes, a yellow net-bag of legal paperwork's and grey sweat suite top and bottom was missing. The individual package my property gave the officer my laundry that day. Hence, the officer (Mrs. B) that packaged my property worked the SHU and told me "you have a lot of property". In fact, Mrs. B current working the SHU this quarter as the relief officer (short white lady with the patch of gray-hair) on Thursday and Friday second shift. Additionally, I was never given access to my property the entire time in your SHU...But I saw the two boxes and yellow net on the far wall right side from the door with my name about a week ago when I was placed in the cage waiting to see the doctor. I told officer Shaw yesterday and he blow me off

Exhibit -G

APPx -I

TO: South Central Regional
    344 Marine Forces Drive
    Grand Prairie, Tx 75051

FR: Mclean Lenroy 61524-054                    July. 8th, 2019
    Beaumont FCI-LOW
    P.O. Box 26020
    Beaumont, Tx 77720

RE: Tort Claim under Title 28 U.S.C § 2680(H)...

To whom this may concerns;

Please be advised that Mclean is initiating a Tort Claim against warden Lewis and several individuals that's assigned to the FCI-Beaumont-LOW and the SCRO. Mclean (Plaintiff) seeks the sums certain amount $50,000 in damages for the following violation(s);

> Title 28 U.S.C § 2680(H)...states in relevant part regards to acts or omission of investigative or law enforcement officers of the United States Government, the FTCA applies to "any claim arising out of assault, battery, false arrest, false imprisonment, abuse of process, libel, slander, mispresentation, deceit or interference with contractual rights".

## Admin #976087-F1

Mclean was apprehended and placed into administrative segregation on 1-31-19, several request was made for his administrative detention order with the specific of the arrest, which was denied-resulted into Mclean declaring an hunger strike wanted to know the reason(s) for being under an SIS investigation and/or the alleged prohibited act code violated. To No Avail.

By Feb. 21, 2019 Mr Sonnier (medical) ordered the SHU lieutenant Brownfield to provided Mclean with a copy of the detention order, while he went to confer with SIS Lt. Hanson of the prohibited code act supposedly had been violated. Lt. Brownfield delivered the order and told Mclean "the rest is on Hanson".

Upon scruting of the detention order used to apprehended Mclean, there was no prohibited act code violation be investigated; 2) the signatures of both lieutenants (Steffey and Fontenot) does not match the signatures

*Exhibit-H*

of these same two lieutenants on inmate (Micheal Thomas 65812-097) incident report and 3) Lt. T. Steffey was signed as a "F. Steffey". See Exh. A.

McLean was presented with a Due Process violation of the forged signature (s) on the detention  order and Hanson's wilful decision to placed him in an administrative segregation was malicious.

By 3-12-19, Hanson wrote an incident report and exaggerated about when he became aware of the incident to distance himself from the date McLean was apprehended with the fraudulent document.

Hanson's coconspirator (Davis) conducted McLean's UDC hearing and further altered McLean comment at the end of his quotation alleging McLean stated "also prohibited code does match description of incident".

McLean had objected to the entire incident report and would have discuss his statement of defense with dho already. See Exh. B.

Eventually, the disciplinary charges was set aside and McLean was release from segregation some 146 days later. False arrest and imprisonment based upon the event that occurred between 1-31-19 thru 6-26-19-where the arrest is followed by incident report proceedings, begins to run at the time McLean becomes detained pursuant to the illegal process or the latest released from administrative segregation.

Both Hanson and Davis had engaged in a conspiracy to deprive McLean of his constitutional rights and to cause him "emotional, psychological and physical injury" by prolonged harassment, discrimination, obstruction of justice abuse of process and/or office and retaliation with no justifiable basis.

<u>Admin. #969369-F1</u>

HIPPA privacy rules prohibits a covered entity from using or disclosing McLean's protected health information with SHU Lt. Brownfield-Brownfield presented in the medical room during examination, talking over McLean, with the nurse/doctor violated HIPPA. McLean asked the nurse/doctor to informed Brownsfield of "HIPPA", because Brownfield was not authorized by

2

Mclean or otherwise allowed under the privacy rules once that examination room was secured.

The nurse/doctor ordered Brownfield to "get him out of here, I am done with him". During the event, medical staff(s) had failed was to followed procedures outlined under P. 5562(hunger strike)-upon initial referral of Mclean been on a hunger strike. Dates of events was not been documented by medical as well. See Exh. C

Mclean's health was threatened and acknowledge by medical to a certain extent and they still refused was to administered medical treatment(force feed) of Mclean such action  and/or inaction demonstrated a misuse of process by medical.

### Admin #970110-F2

Mclean was assaulted by Lt. Brownfield-when he entered Mclean's cell without first handcuffing him through the feed-up slot, per policy. Both Brownfield and Williams placed a belly chain around Mclean's waist and walked him to the medical examination room to be seen by Sonnier. Brownfield tried to intimidated Mclean in the present of several staff, by putting on his black gloves and told Sonnier to "move out the way".

When Mclean was escorted back to his cell (B-range 136 cell), Brownfield kept punching the wall displaying his anger towards Mclean. Upon arrival in the cell, Mclean's belly chain was removed and officer Williams went and posted-up at the door acting as a look-out for Brownfield. Alone with Mclean Brownfield started talking a lot of stuff, Mclean then position himself between the toilet and the bunk, because he was very weak from not eating-when Brownfield shoved him into the wall and waited for Mclean to swing on him. Mclean requested for the CCTV footage to be preserved of the date to prove the duration of time Brownfield spent in Mclean's cell, but such was administratively denied by Sonia Cole.

### Admin 976498-F1

3

Sonia Cole (SCRO) had administratively closed several of Mclean's F.O.I.A request in an attempted to concealed, cover-up by trick, scheme and/or device a material fact (under 18 USC § 1001 and § 371) of irrefutable evidence captured by CCTV footage of staff misconduct in an ongoing investigation and/or litigation of Mclean's grievance(s). There is also other considerable evidence to established that Mrs. Cole had exaggerated within a FOIA request an abuse of office, misuse of process and obstruction of justice with her position-In sum, Cole pattern of behavior has been to avoid disgorgement of ill-gotten gians by engaging in a pattern of obstruction. See Exh. D

## Admin #980176-F1

On the 23 of May 2019, an inmate Martin Dominguez 24418-112 was been treated for scabies after being caught with a cellphone. He was placed in the same cell with Mclean in a form of retaliation. Mclean conferred with the Asst. Warden during SHU rounds (5-28-19)- he asked Mclean "are you scared? I can call the doctor for you" with a smirked on his face, as he walked away. Inmate Dominguez witnessed such an provided Mclean with an affidavit. See Exh. E

Asst. Warden Cutwright felt it was necessary to abuse the process of Mclean's grievance-when she responded to the above reference "History of violence scoreis incorrectly assessed" to avoid this retaliation complaint been forward to the appropriate  staff for an investigation and sanction.

## Admin #980177-F1

Wanda Jones (C/M) knowingly and intentionally altered and manipulated her assigned computer/programming to boosted Mclean's "male custody classification" points, this violation under 18 USC § 1001 and § 1002 of government documents. In particular, Jones had scored Mclean as been "10 points" back in Jan.2019 two day before he was placed in segregation See Exh F--By May 2019 without been found guilty of the alleged prohibited act violation from Mclean false arrest/imprisonment, Jones raised Mclean's points back to "14

4

points" See Exh. G

Jones' antagonism towards Mclean has been long-standing, resulted into Mclean refusing to signed her team paper-works within the years been on her caseload Mclean has been selective discriminated in more than one way or another by his unit team-whom had failed to even transfer him out of this disciplinary prison been clear conduct and program without incident for five years, because of his nationality. Other inmates within Mclean's predictment was transferred out of this prison without incident- this only demonstrate Jones' animosity, hostility and hatred for Mclean. To avoid Jones' been investigated and sanction by the appropriate staff, asst warden Cutwright change the course of the wind abusing her authority once again.

### Admin #976426-F1

Unit Manager Taylor has obstructed justice and abused his office authority, when he hindered and/or removed official documents bearing Mclean's signature submitted for filing. Mclean's cellmate (Provenzano) witnessed such and provided an affidavit of Mclean given his grievances to taylor. See Exh. H To date, a total of two administrative remedies (#974271-R1 and #974270-R1) against Mclean's unit team has mysteriously disappeared resulted into Mclean asking the local U.S attorney's office to intervene. See Exh. I.

The abuse events constitute separate conspiratorial conduct-alternatively above constitute furtherance of the conspiratorial conduct. As a result of the abuse Mclean suffered, physical pain and suffering, denial of constitutional rights was the subject of abuse and mental torment and mental auguish and emotional distress. As a result of the abuse conduct-Mclean has been unlawfully placed into an administrative  segregation due to various conspiricies, interfence with his access to the courts.

All materials facts are with his personal knowledge or belief. Mclean attest that all the material factual statements above are true and correct, under the penalty of perjury pursuant to § 1746.

Date: 7-8-19                                    Signature:

*I/R #3233008*
*EVIDENCE #5 of 7*

✶ *INMATE COPY* ✶
*Exhibit A*

BP-A0308    **ADMINISTRATIVE DETENTION ORDER**    **U.S. DEPARTMENT OF JUSTICE**
JAN 17    **FEDERAL BUREAU OF PRISONS**

FCC Beaumont LOW
_____
Institution

Date/Time: 1-31-2019 1000
_____

TO: Special Housing Unit Officer _____

FROM: W. Fontenot/Lieutenant _____ (Name/Title)

SUBJECT : Placement of _Mclean, Lenroy_ , Reg. No. _61524-054_ , in Administrative Detention

_____(a)  Is pending an investigation for a violation of Bureau regulations;

__✓___(b)  Is pending an SIS investigation.

_____(c)  Is pending investigation or trial for a criminal act;

_____(d)  Is to be admitted to Administrative Detention

_____(1)  Since the inmate has requested admission for protection;

I hereby request placement in Administrative Detention for my own protection.

Inmate Signature/Register No.: _____

Staff Witness Printed Name Signature: _____

_____(2)  Since a serious threat exists to individual's safety as perceived by staff, although person has not requested admission; referral of the necessary information will be forwarded for an appropriate hearing by the SRO.

_____(e)   Is pending transfer or is in holdover status during transfer.

_____(f)   Is pending classification; or

_____(g)   Is terminating confinement in Disciplinary Segregation and has been ordered into Administrative Detention by the Warden's designee.

It is this  Correctional Supervisor's  decision based on all the circumstances that the above named inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the institution because*

You are being placed in the Special Housing Unit for SIS investigation. You will be advised of any changes in your statues

Therefore, the above named inmate is to be placed in Administrative Detention until further notice. The inmate received a copy of this Order on

(date / time) 1-31-2019 1000

Staff Witness Signature/Printed Name T. Steffey/Lieutenant _____ Date 1-31-2019

Supervisor 24 hour review of placement: Signature/Printed name _____

* In the case of DHO action, reference to that order is sufficient. In other cases, the Correctional supervisor will make an independent review and decision, which is documented here.

Record Copy - Inmate Concerned (not necessary if placement is a result of holdover status); Copy - Captain; Copy - Unit Manager; Copy - Operation Supervisor - Administrative Detention Unit; Copy – Psychology; Copy - Central File

PDF    Prescribed by P5270    (Replaces BP-A0308 of JAN 88.)

*Received 2-21-19 by Lt Brownfield*
*After Mr Sonnier approached him*

INCIDENT REPORT

## U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

### Part I - Incident Report

| | |
|---|---|
| 1. Institution:    FCC Beaumont | Incident Report Number: 3233008 |

| 2. Inmate's Name: Mclean, Lenroy | 3. Register Number: 61524-054 | 4. Date of Incident: 1/31/19 | 5. Time: 9:00 a.m. |
|---|---|---|---|

| 6. Place of Incident: Warden's Office | 7. Assignment: Adm Det SHU | 8. Unit: XB |
|---|---|---|

| 9. Incident: Conduct disruptive to the security or orderly running of a BOP facility. Threatening another with bodily harm. | 10. Prohibited Act Code(s) 299 ML203 |
|---|---|

11. Description of Incident (Date: 3/11/2019   Time: 5:12 p.m. Staff became aware of incident):

On March 11, 2019 at approximately 5:12 p.m., an SIS investigation was completed for a threat assessment on inmate Mclean, Lenroy, Reg. No 61524-054. Specifically, inmate Mclean sent a threatening email to a staff member. In the email inmate Mclean wrote: "A warden has four bunk/bed in each prison and you need to get me out of your prison, before I get you the action you don't want." Although inmate Mclean stated that he would never physically assault a staff member, the email could be interpreted to be a physical or non-physical threat and was taken as a threat by the staff member involved. As such code 299 most like code 203 is warranted. This is a rewrite.

| 12. Typed Name/Signature of Reporting Employee: K. Hansen / | 13. Date And Time: 3/12/2019, 3:00 p.m. |
|---|---|

| 14. Incident Report Delivered to Above Inmate By (Type Name/Signature): | 15. Date Incident Report Delivered: 3-12-19 | 16. Time Incident Report Delivered: 5:00pm |
|---|---|---|

### Part II - Committee Action

17. Comments of Inmate to Committee Regarding Above Incident: _Inmate Stated Objection to entire incident report, will discuss Statement of defense with DHO" Also prohibited code does match description of incident_

18. A. It is the finding of the committee that you:

_____ Committed the Prohibited Act as charged.
_____ Did not Commit a Prohibited Act.
_____ Committed Prohibited Act Code(s). _____

B. X The Committee is referring the Charge(s) to the DHO for further Hearing.

C. _____ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days.

19. Committee Decision is Based on Specific Evidence as Follows: _Based on the Severity of the incident report UDC has bound report to DHO for greater sanction_

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act): _UDC recommend greatest Sanction by DHO on their level_

21. Date and Time of Action: 3/14/19 1045 (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings).

| Chairman (Typed Name/Signature) | Member (Typed Name) | Member (Typed Name) |
|---|---|---|

INSTRUCTIONS: All items outside of heavy rule are for staff use only. Begin entries with the number 1 and work up. Entries not completed will be voided by staff.

Distribute: Original-Central File Record; COPY-1-DHO; COPY-2-Inmate after UDC Action; COPY 3-Inmate within 24 hours of Part I Preparation

WD                    Prescribed by P5270                    Replaces BP-A0288 of AUG 11

Exh. 5

To: Health Service Administrator
Fr: McLean, Leroy 61524 054
RE: Medical records lack of entry - Admin #969369-R1
Date: 4-13-19

    To whom this may concerns:
      McLean disputing an entry and/or lack of entry into his medical records, as per Regional Office instruction and further sayeth that;

① On 2-6-19 McLean refused his breakfast tray declaring an hunger strike and was removed from his cell (C-Range 223 cell) for sick call;

② On 2-8-19 Hanson evaluated McLean (BP-180/110 - sugar 107) partially, without taken his weight and/or documented his hunger-strike;

③ On 2-13-19 Psychology department emailed medical in-regards to McLean hunger-strike, because medical staff(s) has not been making rounds;

④ On 2-17-19 McLean was removed from cell (C-Range 223 cell) by Lt. Dortch for complaint of hunger-strike and chest pains and;

⑤ On 2-19-19 a partiall evaluation (BP & sugar) was done, no weight was taken and McLean was placed in an observance cell (B-Range 136 cell). McLean sayeth further not.

Respectfully Submitted

Leroy McLean

Hand written copy...



**U.S. Department of Justice**

**Federal Bureau of Prisons**

*South Central Regional Office*
*U.S. Armed Forces Reserve Complex*
*344 Marine Forces Drive*
*Grand Prairie, Texas 75051*

APR 10 2019

Lenroy Mclean
Register Number 61524-054
FCI Beaumont Low
PO Box 26020
Beaumont, TX 77720 Request Number: 2019-01593

Dear Lenroy Mclean:

This is in response to the above referenced Freedom of Information Act (FOIA) request. The first page of your request is attached to this letter.

Bureau of Prisons staff thoroughly searched for the records you requested using the terms and search parameters referenced in your request. However, we located no records responsive to your request.

If you have questions about this response please feel free to contact the undersigned, this office, or the Federal Bureau of Prisons' (BOP) FOIA Public Liaison, Mr. C. Darnell Stroble at 320 First Street NW, Suite 936, Washington DC 20534.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001.

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001. Your appeal must be postmarked within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Sonya Cole, for
Jason A. Sickler
Regional Counsel

SC/vm

Exh 5

## Affidavit

I Martin Dominguez sworn and said that I am over the age of 18, no threats or promisses where made in exchange of this statement.

On 5/24/19 I Martin Dominguez #24418-112 was recieving treatment for "Scabies" out break in Beaumont low. After being sent to the SHU on an unrelated issue I was placed in the cell with inmate McLean he had concerns about my health conditions "Scabies" being that there where several inmates recieving treatment and being quarantined. McLeans concerns where ignored, later that night after taking the pills I was suppose to gather all my cloths and linen before showering so they can exchange them because of contamination, staff ignored medically instructions they even stated "shut the fuck up and go to sleep" then I put the linen back and went to sleep with out a shower and slept on the contaminated cloth and linen. Knowing the epidemic in all of Beaumont Low. Then on the 28th the assistant warden stoped at our cell and looked in, looking at McLean and stated "are you scared so I can call a doctor for you and smirked and left. I further sayth not.

Date 6/1/19                                 Signature _____

                                            24418-112

Exh.66

```
BMLEQ  606.00 *        MALE CUSTODY CLASSIFICATION FORM       *        01-29-2019
PAGE 001 OF 001                                                      15:09:21
                        (A) IDENTIFYING DATA
 REG NO..: 61524-054          FORM DATE: 02-28-2018          ORG: BML
 NAME....: MCLEAN, LENROY

                                     MGTV: NONE
 PUB SFTY: ALIEN                     MVED:
                        (B) BASE SCORING
DETAINER: (0) NONE            SEVERITY.......: (3) MODERATE
MOS REL.: 87                  CRIM HIST SCORE: (04) 6 POINTS
ESCAPES.: (0) NONE            VIOLENCE.......: (5) < 5 YRS MINOR
VOL SURR: (0) N/A             AGE CATEGORY...: (2) 36 THROUGH 54
EDUC LEV: (0) VERFD HS DEGREE/GED  DRUG/ALC ABUSE.: (0) NEVER/>5 YEARS
                        (C) CUSTODY SCORING
TIME SERVED.....: (4) 26-75%    PROG PARTICIPAT: (2) GOOD
LIVING SKILLS...: (2) GOOD      TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE      FAMILY/COMMUN..: (4) GOOD


               --- LEVEL AND CUSTODY SUMMARY ---

BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
+14  +20    -4        +10      LOW          N/A            IN      DECREASE



G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

BMLEQ  606.00 *      MALE CUSTODY CLASSIFICATION FORM      *      05-30-2019
PAGE 001 OF 001                                                    17:25:47

                         (A) IDENTIFYING DATA

REG NO..: 61524-054          FORM DATE: 05-15-2019        ORG: BML
NAME....: MCLEAN, LENROY

                                        MGTV: NONE
PUB SFTY: ALIEN                         MVED:

                         (B) BASE SCORING

DETAINER: (0) NONE              SEVERITY.......: (3) MODERATE
MOS REL.: 73                    CRIM HIST SCORE: (04) 6 POINTS
ESCAPES.: (0) NONE              VIOLENCE.......: (5) < 5 YRS MINOR
VOL SURR: (0) N/A               AGE CATEGORY...: (2) 36 THROUGH 54
EDUC LEV: (0) VERFD HS DEGREE/GED  DRUG/ALC ABUSE.: (0) NEVER/>5 YEARS

                         (C) CUSTODY SCORING

TIME SERVED.....: (4) 26-75%    PROG PARTICIPAT: (1) AVERAGE
LIVING SKILLS...: (0) POOR      TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE      FAMILY/COMMUN..: (3) MINIMAL


                   --- LEVEL AND CUSTODY SUMMARY ---

BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
+14  +16     0        +14       LOW          N/A            IN      SAME


G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

https://bop.tcp.doj.gov:9049/SENTRY/J1PPG60.do                      5/30/2019

Exh H

## AFFIDAVIT

I AM OVER THE AGE OF 18 YRS. OLD AND THIS WAS MADE WITHOUT ANY THREATS OR PROMISES:

ON APRIL 2, 2019 MCLEAN (CELL MATE) ASKED ME TO VERIFY AND CCTV FOOTAGE WILL CONFIRM HIS BP-9 WITH ATTACHMENTS OF LETTER TO INTERNAL AFFAIRS AND U.D.C. REPORT BEFORE HANDING IT TO UNIT MANAGER TAYLOR. THE FOLLOWING WEEK (4/9/2019) A TOTAL OF 3 BP-9'S WERE TURNED IN TO UNIT MANAGER TAYLOR MCLEAN RECIEVED HIS RESPONCES ON THE 3 DATED (4/9/2019) BUT NEVER RECIEVED A RESPONCE FOR BP-9 FROM (4/2/2019) WITH ATTACHMENTS.

I MICHAEL PROVENZANO #13545-062 DECLEAR UNDER THE PENALTY OF PERJURY THAT THE ABOVE STATEMENT IS TRUE AND SAYTH ME NOT

Michael Provenzano      4/28/2019

MICHAEL PROVENZANO   #13545-062
BEAUMONT FCI LOW

TO: Michael W. Lockhart
    U.S. Attorney's Office
    350 Magnolia ave ste 150
    Beaumont, Tx 77701

TO: Jason Sickles (SCRO)
    Regional Counsel
    344 Marine Forces Drive
    Gran Prairie, Tx 75051

FR: Lenroy Mclean 61524-054
    FCI-Beaumont-LOW
    P.O. Box 26020
    Beaumont, Tx 77720

RE: Section 1997e of the civil rights of institutionalized persons act. 42 USC § 1997-1997j...cert# 70103090000333700325.

Good day Mr. Lockhart

With all due respect, to the above reference-I would like to request for your office to instruct warden Lewis to have his administration process my grievance(s) without incident, please. This situation has been ongoing-several grievances was (#974271-R1 & 974270-R1 etc.) filed to the regional director (28 CFR § 542.15) without any response.

I have done my due diligence with the warden's secretary, which was futile. I had even refiled these particular grievances with attachments of the warden's first responses back to the warden (28 CFR 542.14) and they was not process.

I am requesting for your office to intervene and instruct this warden to process my grievances refiled at his level and/or locate these missing grievances from the regional office without any incident.

Thanking you in advance for your time and consideration given.

Date: 6-30-19

Respectfully Submitted

Lenroy Mclean 61524-054

Civil Rights Division

*Certify mail # 7018 3090 0001 9720 8953*

Federal Coordination and Compliance Section - NWB
950 Pennsylvania Ave, NW
Washington, DC 20530

## COMPLAINT FORM

The purpose of this form is to assist you in filing a complaint with the Federal Coordination and Compliance Section. You are not required to use this form; a letter with the same information is sufficient. However, the information requested in the items marked with a star (*) must be provided, whether or not this form is used.

1.* State your name and address.

Name: Lenroy Mclean 61524-054

Address: Beaumont FCI-LOW  P.O. Box 26020

Beaumont , TX          Zip 77720

Telephone: Home: (     ) NA        Work or Cell: (     ) NA

2.* Person(s) discriminated against, if different from above:

Name: Taylor u/m, Wanda Jones c/m, and Rodney Davis counselor

Address: P.O. Box 26020

Beaumont, Tx          Zip 77720

Telephone: Home: (     ) none        Work or Cell: (     ) unknown

Please explain your relationship to this person(s).

NONE

3.* Agency and department or program that discriminated:

Name: Federal Bureau of Prisons

Address: 320 First st N.W.

Washington, D.C. 20534          Zip 20534

Telephone: Home: (     ) unknown        Work or Cell: (     ) unknown

4A.* Non-employment: Does your complaint concern discrimination in the delivery of services or in other discriminatory actions of the department or agency in its treatment of you or others? If so, please indicate below the base(s) on which you believe these discriminatory actions were taken.

_____ Race/Ethnicity: _____

xxx National origin: Selectively-Cultural identity

_____ Sex: _____

_____ Religion: _____

_____ Age: _____

_____ Disability: _____

OMB No. 1190-0008
Expires: 04/30/2014

*Exhibit-I*

4b.* Employment: Does your complaint concern discrimination in employment by the department or agency? If so, please indicate below the base(s) on which you believe these discriminatory actions were taken.

_____ Race/Ethnicity: _____

_____ National origin: _____

_____ Sex: _____

_____ Religion: _____

_____ Age: _____

_____ Disability: _____

5. What is the most convenient time and place for us to contact you about this complaint?
__via-certify mail_____

6. If we will not be able to reach you directly, you may wish to give us the name and phone number of a person who can tell us how to reach you and/or provide information about your complaint:

Name: _____N/A_____

Telephone: Home:(_____)_____ Work or Cell: (_____)_____

7. If you have an attorney representing you concerning the matters raised in this complaint, please provide the following:

Name: _____N/A_____

Address: _____

_____ Zip_____

Telephone: Home: (_____)_____ Work or Cell: (_____)_____

8.* To your best recollection, on what date(s) did the alleged discrimination take place?

Earliest date of discrimination:    __Jan. 29, 2019__

Most recent date of discrimination:    __June 26, 2019__

9. Complaints of discrimination must generally be filed within 180 days of the alleged discrimination. If the most recent date of discrimination, listed above, is more than 180 days ago, you may request a waiver of the filing requirement. If you wish to request a waiver, please explain why you waited until now to file your complaint.

I was illegally confined to a segregation- this complaint is timely
_____

_____

-2-

10.* Please explain as clearly as possible what happened, why you believe it happened, and how you were discriminated against. Indicate who was involved. Be sure to include how other persons were treated differently from you. (Please use additional sheets if necessary and attach a copy of written materials pertaining to your case.)

Mclean has been a victim of a long-standing pattern of a "selective discrimination" that has been ignored by the Federal Bureau of Prisons, because of his cultural identity here at FCI Beaumont-LOW. Individuals action create a substantial risk of significant adverse impact on the Bureau of Prisons' (BOP) policy and its ability to rehabilitate and/or transfer a class, race and cultural identity person/inmate like Mclean without incident.

Mr. Taylor (unit manager), Wanda Jones (case manager) and Rodney Davis (counselor) are functioning not as a advocate for the United States Bureau of Prisons, they are advocating for their interests contrary to BOP policy and statutory authorities and/or directives.

Specifically, back in Jan. 29, 2019 Jones had revised Mclean's male custody classification and scored him at been "10 points". By the 31th of Jan. 2019, Mclean was placed in the administrative segregation unit-the opportunity presented itself and Jones took advantage of such knowingly and intentionally manipulated the computer system (18 U.S.C § 1001 (a)(3)) to hence Mclean's points back to "14". See Exhibit A & A-2

CONTINUE ON NEXT PAGE...

11. The laws we enforce prohibit recipients of Department of Justice funds from intimidating or retaliating against anyone because he or she has either taken action or participated in action to secure rights protected by these laws. If you believe that you have been retaliated against (separate from the discrimination alleged in #10), please explain the circumstances below. Be sure to explain what actions you took which you believe were the basis for the alleged retaliation.

I was sent bac to the compound and placed in a three man cell prior to me being placed in the segregation, I was housed in a two man cell. The matress is in very bad condition, Davis and taylor refused to provide me with a pillow and/or chance the matress. I was assigned back to my work detail, but not my position and/or grade pay and my personal property has been missing. Also, the Southern District of New York-District Court issued an ORDER dated April 24, 2019 that was thrown-out by either my unit team (Davis, Jones or Taylor) and/or the mail room staffs.

-3-

SELECTIVE DISCRIMINATION CONTINUATION....PAGE 3A.

Male custody classification scores are done once a year, unless Mclean is convicted of a violation of prison rules. Such never happen, other than for the ficticious charged used to hold Mclean in segregation (1-31-19). Mclean has been housed at Beaumont a disciplinary prison since Oct. 2014- he has maintained employment, program religiously and remain clear conduct since then.

Jones refused to process any transfer other than disciplinary transfer back to a higher security, reason she have keep Mclean's points at "14" been clear clear conduct all these years.
She has partake in deragotory statement about Mclean's cultural identity with Davis, has destory Mclean out-going legal mails and refused to assist him with educational and vocational goals. Mclean had even stop signing team meeting paperworks, becauseof their deragatory statement each time.

Davis has partake in the alteration of Mclean's statement during a unit team hearing to have Mclean face stiff penalties for the ficticious charges against him; Davis have called Mclean "stupid and banana boat entry" during his team meeting on Jan. 29, 2019, and looked toward Jones for her confirmat ion on such. They both had a good laugh; Davis has also throw-out Mclean's legal-mails outgoing and incoming, hindered his administrative grievances and destory his typing ribbons. There was numberous complaints, and the Bureau of Prisons knew of these staff(s) misconducts, but did not "do any-thing to stop, prevent and/or investigate the merits of the complaints".

A former federal employee of Beaumont had filed a complaint of how "he's (Davis) very charismatic"-a compulsive liar-that lies when it suit his needs. The fox that's left to guard the hen house, when you have eliminated the impossible, whatever remains, however improbable, must be the truth. See Exhibit B.

Taylor referred derogatorily towards Mclean and allured that "he (Mclean) did not have anything coming from him (taylor) and his tax-paying dollars was taken care of Mclean". His anomosity and hatred for Mclean cultural identity was displayed in his response dated Jan. 30, 2019. See Exhibit C. Each grievances filed with regards to Mclean "selective discrimination" against these staff(s) taylor supervised has mysteriously disappeared, which the misconduct keep re-occurring, while further insulating staff and butteressing.

12. Please list below any persons (witnesses, fellow employees, supervisors, or others), if known, whom we may contact for additional information to support or clarify your complaint.

Name                          Address                                   Area Code/Telephone

_____

_____

_____

_____

_____


13. Do you have any other information that you think is relevant to our investigation of your allegations?

missing grievances #'s 974271-F1 and 974270-F1 selective discrimination complaint; ficticious incident report #3233008; a review of each unit team meeting with case manage Jones , counselor Davis and Taylor signed by Mclean and cop-out to case manager Jones dated on/or about 1-27-2019

_____

_____

_____


14. What remedy are you seeking for the alleged discrimination?

For the Beaumont staff to cease and decease their discrimination towards Mclean, transfer Mclean into a regular population that's non-disciplary (out of Texas) and has these staffs sanction and relinquish their position effective immediately...

15. Have you (or the person discriminated against) filed the same or any other complaints with other offices of the Department of Justice (including the Office of Justice Programs, Federal Bureau of Investigation, etc.)?

Yes xx   No xxx

If so, do you remember the Complaint Number?
     See #13 for numbers

Against what agency and department or program was it filed?
          FBOP
Address:   320 first st NW
           Washington DC                              Zip   20534
Telephone No: (____)_____
Date of Filing: _____   DOJ Agency:_____

-4-

Briefly, what was the complaint about?

_____selective discrimination_____

_____

_____


What was the result?

_____missing-in-action_____

_____

_____


16. Have you filed or do you intend to file a charge or complaint concerning the matters raised in this complaint with any of the following?

_____ U.S. Equal Employment Opportunity Commission

_xxx_ Federal or State Court

_____ Your State or local Human Relations/Rights Commission

_____ Grievance or complaint office


17. If you have already filed a charge or complaint with an agency indicated in #16, above, please provide the following information (attach additional pages if necessary):

Agency: _____

Date filed: _____

Case or Docket Number: _____

Date of Trial/Hearing: _____

Location of Agency/Court: _____

Name of Investigator: _____

Status of Case: _____

Comments: _____

_____

_____

_____


18. While it is not necessary for you to know about aid that the agency or institution you are filing against receives from the Federal government, if you know of any Department of Justice funds or assistance received by the program or department in which the alleged discrimination occurred, please provide that information below.

_____

_____NONE_____

_____

19.* We cannot accept a complaint if it has not been signed. Please sign and date this Complaint Form below.

_____         _7-18-2019_
(Signature)                                          (Date)

Please feel free to add additional sheets to explain the present situation to us.


We will need your consent to disclose your name, if necessary, in the course of any investigation. Therefore, we will need a signed Consent Form from you. (If you are filing this complaint for a person whom you allege has been discriminated against, we will in most instances need a signed Consent Form from that person.) See the "Notice about Investigatory Uses of Personal Information" for information about the Consent Form. Please mail the completed, signed Discrimination Complaint Form and the signed Consent Form (please make one copy of each for your records) to:

United States Department of Justice
Civil Rights Division
Federal Coordination and Compliance Section - NWB
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Toll-free Voice and TDD: (888) 848-5306
Voice: (202) 307-2222
TDD: (202) 307-2678

20. How did you learn that you could file this complaint?

A family member looked it up on the internet and send me this form...

21. If your complaint has already been assigned a DOJ complaint number, please list it here:

_____


Note: If a currently valid OMB control number is not displayed on the first page, you are not required to fill out this complaint form unless the Department of Justice has begun an administrative investigation into this complaint.

-6-

Civil Rights Division
*Federal Coordination and Compliance Section*

# COMPLAINANT CONSENT/RELEASE FORM

Your Name: Lenroy Mclean 61524-054

Address: Beaumont FCI-LOW

P.O. Box 26020, Beaumont, Tx 77720

Complaint number(s): (if known)

*Please read the information below, check the appropriate box, and sign this form.*

I have read the Notice of Investigatory Uses of Personal Information by the Department of Justice (DOJ). As a complainant, I understand that in the course of an investigation it may become necessary for DOJ to reveal my identity to persons at the organization or institution under investigation. I am also aware of the obligations of DOJ to honor requests under the Freedom of Information Act. I understand that it may be necessary for DOJ to disclose information, including personally identifying details, which it has gathered as a part of its investigation of my complaint. In addition, I understand that as a complainant I am protected by DOJ's regulations from intimidation or retaliation for having taken action or participated in action to secure rights protected by nondiscrimination statutes enforced by DOJ.

## CONSENT/RELEASE

[xx] **CONSENT** - I have read and understand the above information and authorize DOJ to reveal my identity to persons at the organization or institution under investigation. I hereby authorize the Department of Justice (DOJ) to receive material and information about me pertinent to the investigation of my complaint. This release includes, but is not limited to, personal records and medical records. I understand that the material and information will be used for authorized civil rights compliance and enforcement activities. I further understand that I am not required to authorize this release, and do so voluntarily.

[ ] **CONSENT DENIED** - I have read and understand the above information and do not want DOJ to reveal my identity to the organization or institution under investigation, or to review, receive copies of, or discuss material and information about me, pertinent to the investigation of my complaint. I understand this is likely to impede the investigation of my complaint and may result in the closure of the investigation.

_____    7-18-2019
SIGNATURE                    DATE

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JULY 29, 2019

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : LENROY MCLEAN, 61524-054
      BEAUMONT LOW FCI    UNT: XB    QTR: X06-028L
      P.O. BOX 26025
      BEAUMONT,  TX 77720

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 974271-A1       CENTRAL OFFICE APPEAL
DATE RECEIVED   : JULY 2, 2019
SUBJECT 1       : ADMINISTRATIVE REMEDY PROCEDURES
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE
                 WRONG LEVEL. YOU SHOULD HAVE FILED AT THE
                 INSTITUTION, REGIONAL OFFICE, OR CENTRAL
                 OFFICE LEVEL.

REJECT REASON 2: SEE REMARKS.

REMARKS         : NO RECORD OF FILING AT THE REGIONAL LEVEL.


ATT: Mr. Conner
  Mclean appeal to the regional level was filed in a timely fashion-like
every other administrative remedies Mclean have ever filed in the pass.
Whether or not such was intercepted and/or refused to filed at the regional
because of it's context, Mclean had no control over such housed in the SHU
at the time.
Per policy 1330.18 Ch.12, the time allotted for reply including extension
has expired-should you refused to process this appeal, I will considered
such appeal not available at this level and move to the courts.
Both discrimination and administrative remedy procedures and now classifi-
cation/program reviews #980176-R2 you all playing games with, lets hear
what the judge has to say about this.

Date: Aug. 5, 2019                    Signature:


CC
Local AUSA office

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JULY 26, 2019

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : LENROY MCLEAN, 61524-054
      BEAUMONT LOW FCI    UNT: XB    QTR: X06-028L
      P.O. BOX 26025
      BEAUMONT, TX 77720

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID        : 974270-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED    : JUNE 27, 2019
SUBJECT 1        : DISCRIMINATION
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON 1: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE
                WRONG LEVEL. YOU SHOULD HAVE FILED AT THE
                ▓▓▓▓▓▓▓ REGIONAL OFFICE, ▓▓▓▓▓▓▓
                OFFICE LEVEL.

REJECT REASON 2: SEE REMARKS.

REMARKS        : SENTRY INDICATES YOUR HAVE NOT APPEALED THE REGIONAL
                LEVEL. NEXT STEP IS APPEAL REGION

ATT: Mr. Conner
   Mclean appeal to the regional level was filed in a timely fashion-like
every other administrative remedies Mclean have ever filed in the passed.
Whether or not such was intercepted and/or refused to filed at the regional
because of it's context, Mclean had no control over such housed in the SHU
at the time.
Per policy 1330.18 Ch.12, the time allotted for reply including extension
has expired-should you refused to process this appeal, I will considered such
appeal not available at this level and move to the courts.
Both discrimination and administrative remedy procedures and now classifi-
cation/program reviews #980176-R2 you all playing games with, lets hear what
the judge has to say about this.

Date: Aug. 3, 2019                    Signature: Lnj Mc-L
CC
Local AUSA office

# Clients say local builder failed to complete construction on homes

Submitted by Sharon Brooks on September 12, 2016 - 12:00am



**Story Attachment:**

BBB tips.pdf

Aristotle said, "Well begun is half-done," but half-done isn't where the job ends, and certainly isn't good enough when you hire someone to build the home you and your family will inhabit for years to come.

Unfortunately, multiple clients of one local builder say that's exactly what happened to them. They told The Examiner the contractor they hired to erect their homes failed to complete construction, leaving them with unfinished, and often unlivable, houses.

Latigdra Brown, Don and Stacy Webb, and Norris and Tameka Bourne all say Rodney Davis, a contract homebuilder in Beaumont, breached their trust and their contracts when he either stopped working on their houses before they were completed or failed to complete them to their specifications.

**'He's very charismatic.'**

A single mom working at the federal correctional facility in Beaumont while raising her young daughter, Latigdra Brown said she was initially excited about the building of her dream home. Now, she is struggling to finish what Davis started after he ceased working on the house.

"It's really difficult," Brown said. "My parents are coming down on weekends to help me paint and everything. We had to put in the cabinets in the kitchen. There's a lot to do. The weekend is the only time we can do it, and I couldn't afford to hire anyone else. I have to pay the bank."

Brown said she met Rodney Davis and his wife, Deshawn, at the prison where they all work. In April 2015, Brown decided she wanted a new home and told colleagues she was looking for a builder. Davis told Brown that in addition to his job in corrections, he was also a homebuilder. He said he'd built several homes in the area and would be happy to provide her with a quote. Brown was hopeful, if a bit skeptical.

"I did some research," said Brown, "and I saw that he'd been sued before, but he told me that was just a misunderstanding. He was very convincing. He's very charismatic. I decided to give him a chance since we work together."

Brown and Davis started negotiating a contract for the construction of her new home in April 2015. He ultimately agreed to build the house for $115,000, and the deal was set.

She signed the contract, and took out a loan with MCT Credit Union. Brown said the credit union stipulated in the loan documents that construction on the house should be completed by August 2016, but Davis boasted a much sooner date of completion.

"He told me he could have it done in three months," Brown said.

According to Brown, construction was to start in August 2015, but bad weather pushed that date back to October 2015. Still, with Davis' assurance he would have the house done in a mere three months, Brown should have had time to move in before her little girl Tamia's birthday in February 2016.

"In December 2015, things just started slowing down," Brown recalled. "He went on vacation with his wife. They were going to casinos. He started blaming the contractors for the slow work."

Finally, Brown said, she confronted Davis in January 2016, the three-month mark at which he'd said he would have the house done. She told him she was concerned about the slow pace. He did not like being questioned, she said.

"He does things to challenge your intelligence," Brown asserted. "He told me, 'You don't know what you're talking about. You don't know how to build a house.'"

From that time forward, things only got worse, said Brown.

"He was installing things I didn't want, like my bathtub. I didn't want it. The crown molding, the door trim, and a few other things – I think he just had this stuff stored at his house and thought I wouldn't say anything about it if he already had it installed."

Brown said she had mentioned to Davis that she had not approved some of his choices, like the molding, but she had allowed it to remain – until the bathtub.

"I made him take out the bathtub he installed because it wasn't what I'd told him I wanted. The one he took out is still sitting in my garage. He told me he couldn't take it back to exchange it or get a refund. I am sure it is just one he had lying around his place. I asked for the receipt several times. He never provided it."

Brown said Davis refused to provide a number of receipts during the build.

When Davis started asking for money for work that was to have already been completed, the credit union wanted to see some documentation, as well, said Brown.

"He complained about the 'turnkey policy' with the bank," Brown related. "He said he had no money to pay the brickers. I asked why he had no money. He said the bank would not let him make a draw from the loan. I called the bank, and they told me he should have enough money for the brickers, and said, 'We've already given him too much.'"

When Brown asked what they meant by that, the credit union representative reportedly told her that they had paid out 90 percent of the loan when Davis had completed only 75 percent of the work.

Brown said Davis accompanied her to the credit union once but did not bring documentation or receipts with him. The loan officer told him to finish the job, said Brown, but Davis "got up and walked out."

"The people at the bank said he had already taken out money to pay the brickers. Well, the brickers did the work and wanted to be paid. I tried to get him to pay, but he wouldn't. The brickers were going to try to get a lien on my house, so the bank finally paid them."

After the credit union paid the bricklayers from the loan account, there was less than 10 percent of the money remaining to complete the construction. And they were not the

previously agreed to were not installed correctly and the back door was installed inside out. It has built-in blinds, and the controls for the blinds were on the outside of the house. ... All issues seemed to be identified by me."

May 8, 2015, one week before the first contract signed by the Webbs stipulated the house would be finished, Davis went on vacation, said Webb. The following day, masons arrived on the construction site and told Webb they needed to be paid. According to Webb, they told him they were supposed to meet Davis and he was to pay $3,600 for the masonry.

Webb paid them $1,800 out of pocket so they would go ahead with the work. He was not reimbursed for that expense, and numerous others, he explained. He said in the end, the couple paid Davis roughly 99 percent of the $201,000 contract.

"I advised Davis we were only withholding $2,600 while he was refusing to pay (for) over $14,000 in completed work," Webb said. "The AC contractor (also) called and explained he had not been paid $1,400."

In August, three months after the Webbs' home was to be completed, Don Webb visited an attorney for advice, but Davis contacted him and restored negotiations. Webb now believes Davis was stalling, giving himself time to come up with an attorney and file against the Webbs.

Sept. 22, 2015, the Webbs received a letter from a local law firm stating that Davis had retained them related to "a dispute associated with payment for work performed under a residential contract dated December 12, 2014. My client is owed the amount of $15,100 for work performed under this contract."

"We were shocked," said Webb.

To add insult to injury, two days later the Webbs received correspondence from another local law firm threatening to place a lien on the couple's property if they did not pay the A/C contractors their $1,425 remaining balance for work done on the new home.

They paid it, but their nightmare didn't end there. Davis himself then placed a lien on their home, illegally according to Webb, who had to have the lien removed before he could finish building his home.

"This caused yet another two months of delay in our loan process," said Webb. "We went to mediation twice. Davis agreed that he was holding my money, agreed that there is still money owed for work that had been done on the house, and agreed that he still owed me money. In the first round of mediation, he agreed to pay $10,000. In the second, he acquiesced to $3,000."

He never paid any of that money back to the Webbs, who have had to complete their home themselves. In August, Don Webb said he was seeking binding arbitration but did not expect to see any money from Davis.

**'He's charming.'**

Norris and Tameka Bourne contracted Rodney Davis to build their home for $154,000 in August 2011. Tameka Bourne said she heard about Davis through his wife, Deshawn, and had passed by some homes he'd built in Beaumont.

"I believe we signed the contract in August 2011," said Bourne. "He said he'd had some problems in the past, so he had to go through Colbert Homes to build our house."

She said Davis soothed any fears she had about his past problems by telling her it had all been a misunderstanding.

"He's charming," Bourne said of Davis. "He seemed like a nice person, and I'd seen

only ones threatening liens. That's when Davis quit, said Brown.

"He stopped work," she asserted. "The plumbers weren't paid. The HVAC company wasn't paid. The electrician wasn't paid.

"He quits working on houses. He has done this before. His wife is in on it, too. She plays innocent, but her name is on all of the documentation."

Deshawn Davis and Rodney Davis are both registered owners of Fresh Start Homes, 4990 Brace St., Beaumont. Fresh Start is one of Davis' homebuilding businesses. He is also listed as an owner of Destin Developments and R&E Homes, the latter with Eric Evans. The Better Business Bureau (BBB) lists Fresh Start and R&E as "Alternate Business Names" for Destin Developments. The addresses for all three are 4990 Brace St. in Beaumont.

**'I believed him.'**

One year prior to Brown's difficulties with Davis, another couple contacted The Examiner about the builder, who had failed to complete their home, as well.

Don and Stacy Webb live in Orange. Don works at the federal correctional facility in Beaumont along with Brown and Davis, while Stacy is a schoolteacher at Bridge City High School. Like Brown, Don Webb met Davis at work, and, also like Brown, he knew Davis had been sued previously but was convinced to give his co-worker the benefit of the doubt.

"He told me he'd had issues with clients in the past, but they had been resolved," Webb said. "I believed him."

Webb contracted Fresh Start Homes LLC, Davis' business name at that time, for $201,000 to build his family's home in December 2014. He issued the first payment, a loan draw in the amount of $40,150, to Deshawn Davis on Dec. 12. Four days later, Rodney Davis told Webb he needed to sign a new contract.

"Mr. Davis had changed company names from Fresh Start Homes to Destin Developments," said Webb, who noted at least one other change in the contract. "(The) original contract had a completion date of May 15 (2015). (The) second contract had no completion date."

Jan. 22, 2015, Webb paid Deshawn Davis $53,250 with a cashier's check for the second loan draw as agreed per the homebuilding contract. Problems between Webb and Davis emerged soon after.

Jan. 24, 2015, when Webb asked Davis why no one was working on the house, Davis reportedly told him "not to worry … we still have four months."

Jan. 30, 2015, Webb himself had to be present to meet with someone from the septic company because Davis said he could not attend, and a few days later Webb had to pay over $1,600 for a door even though it should have been paid under the contract, Webb says, because again, Davis was not available. Feb. 8, 2015, Webb told Davis the framers had placed the picture window in the wrong location per specifications. Webb said Davis started to argue, but then agreed it would be fixed when he looked at the plans.

Things kept getting worse, said Webb. March 14, 2015, he really started to worry.

"I provided Mr. Davis with (a) 220 outlet that matched the plug on my welder to be put in the garage," Webb recalled. "Mr. Davis … lost the plug and the wrong type of plug was later installed.

"After work for the day was complete, I inspected the house to find that windows

some of the houses he'd built."

Unlike with Brown and the Webbs, Davis completed construction of the Bournes' new home, albeit a month behind schedule. Bourne said the electrical plug on their kitchen island did not work and had to be fixed. The custom shower had the wrong door installed on it.

"We moved in March 10, 2012. Basically, he was supposed to be finished in February," said Bourne.

Construction issues arose almost immediately, said Bourne.

"When my oldest daughter took a bath in the bathtub, and water seeped out into the hallway. That's when we started noticing. It was maybe a month or two after we were there. Also, the breakers, a few months out, the breakers started flipping off. I guess the voltage was wrong, and it wasn't strong enough."

The water seeping into the hallway also seeped into her son's closet, causing discoloration there and on the baseboards around the leakage.

"That's where things started."

But they didn't end there.

"The dishwasher kept giving us problems, and the plumber came and changed the disposal. There was all sorts of stuff. The granite countertop in the kitchen, we looked, and this was only a month or two after (moving in), and there was a crack in it."

The Bournes sued Davis and won.

"We were awarded $13,000 in damages, shared between Davis and Colbert Homes," said Bourne. "We received a judgment of $25,000 against just Davis for breach of contract."

They haven't gotten a dime of it, Bourne asserted.

**Other victims**

Brown, the Webbs and the Bournes all contacted The Examiner to say Rodney Davis deceived them and did not complete work he was contractually obligated to finish.

But they aren't the only ones accusing Davis of poor business practices. Court documents from two different lawsuits revealed Davis was accused of similar practices in the past – and ordered to pay.

April 22, 2014, Curtis Cummings filed a lawsuit against Davis and Fresh Start Homes LLC when Davis allegedly failed to complete construction of a new house Cummings commissioned. According to court documents, Cummings was set to sell the property for a nice profit but was unable to because Davis failed to complete construction by the agreed-upon date.

Aug. 12, 2015, Cummings received a default judgment of $85,072.47 plus interest of 6 percent per year until paid. Cummings has since died.

Thelma Williams contracted Davis under dba R&E Homes to build her house in Beaumont. She sued him for deceptive trade practices and on Feb. 11, 2011, won a judgment of $32,244.50, including attorney's fees, at 5 percent annual interest.

**Check it out**

BBB Dispute Resolution Director Jay Sheppard said the BBB has heard of Davis and his multiple business monikers.

"BBB has concerns regarding this business as Destin Developments currently has an F rating with three unanswered complaints," Sheppard told The Examiner. "Please encourage consumers to visit www.bbb.org to check business reviews BEFORE making

decisions and signing contracts. Also, please urge those who experience problematic marketplace issues to file a complaint or submit a customer review with BBB."
Sheppard said by letting the BBB know when you have issues with a service provider, you could be saving the next person the pain and trouble you experienced.
Calls to Rodney and Deshawn Davis for comment were not returned.

# XB UNIT INMATES

Due to me not being here for unforeseen reasons it has been brought to my attention by inmates and staff that the unit is completely filthy and unsafe. I apologize for my neglect to your needs and having you live in this type of environment.

With that being said Monday July 29th is SAFETY AND AMNESTY DAY. If you have any soft contraband(cardboard, locker buddies, string lines, large amount of books, boxes) inside your cube please discard it before Monday. If you have hard contraband (cell phones, drugs, shanks, K2) please give to unit officer or bring to the lieutenants office. Please ensure everything you own from this point on fits inside you locker other than your shoes, laundry bag, and cooler. If you get a little confuse please do not get discouraged when I come through I will throw it away for you(WITH AN INCIDENT REPORT !!)

Lets make XB great again!

IF Removed from wall I will come find . FYI

Exhibit - J

NOV 20 2019

LENROY MCLEAN, 61524-054
BEAUMONT LOW FCI    UNT: XB    QTR: X06-028L
P.O. BOX 26025
BEAUMONT,  TX 77720

Attachments
of
Grievances including
frustrated ones...

SCABIES

980176-R1-F1, A1

**FEDERAL CORRECTIONAL COMPLEX (FCC), BEAUMONT, TEXAS**
**PART B - RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #980176-F1**
**AMENDED**

This is an amended response to your Request for Administrative Remedy received June 7, 2019, in which you allege the History of Violence score is incorrectly assessed on your Custody Classification form as retaliation. As relief, you request your History of Violence points be corrected to reflect a score of 10 instead of 14.

A review of your allegation reveals you were found guilty of Code 201, Fighting with Another Person, on August 19, 2014, while at FCI-II Oakdale. Pursuant to P5100.08, <u>Inmate Security Designation and Classification</u>, "Any institution disciplinary hearing (UDC or DHO) finding that a prohibited act was committed during the current term of confinement will be scored as a history item." Therefore, your History of Violence points have been applied according to policy. You have failed to provide any evidence or information indicating your score is based on retaliation.

Bureau of Prisons staff members are expected to demonstrate respect, integrity and correctional excellence. All allegations of staff misconduct are taken seriously and forwarded to the appropriate staff for review.

Based on the above information, this response to your Request for Administrative Remedy is denied.

If you are not satisfied with this response, you may appeal to the Regional Director at Bureau of Prisons, South Central Region, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas 75051. Your appeal must be received in the South Central Regional Office within 20 days of the date of this response.


_____                    ___7/18/19_____
M. K. Lewis, Warden                                 Date

U.S. Department of Justice

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: ___McLEAN LENROY___    ___61524054___  ___C-RANGE 217 cell___  ___Beaumont Low___
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A - REASON FOR APPEAL _McLEAN moves to relegate the same set of facts within Admin #980176-F1, because response was misconstrued to avoided sanction under P.3420.11 by the appropriate staff. In specific, assist warden knew an inmate with scabies was placed in the cell with McLEAN (see Dominques Affidavit attached to warden Admin); ② He knew of the factitious and misleading information forwarded to the acting regional director within "response to inmate request to staff" dated 5-31-19 delivered by C/M Jones and ③ He knew about the alteration of McLEAN's male custody classification by C/M Jones. This particular grievance #980176-F1 was not about McLEAN's points - This same response was used on another number response which make no modicum of sense._

___6-20-18___                    ___[signature]___
DATE                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

JUN 2 6 2019

BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRO

_____        _____
DATE                              REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE            CASE NUMBER: ___980176-R1___

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____        _____
DATE                              SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN            PRINTED ON RECYCLED PAPER            BP-230(13)
JUNE 2002

Regional Administrative Remedy Appeal No. 980176-R1
Part B - Response

You are appealing the Warden's response to your Request for
Administrative Remedy in which you allege staff retaliated
against you by placing an inmate with scabies in your cell,
providing fictitious information to the Regional Director, and
altering your custody classification.

Your concerns regarding your custody classification scoring have
been addressed in response to Regional Administrative Remedy
Appeal No. 980177-R1.  Your remaining allegations of staff
misconduct have been forwarded to the appropriate component for
review.  If warranted, appropriate corrective action will be
taken after completion of the review.

This response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to
the Federal Bureau of Prisons, Office of General Counsel,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal
must be received in the Office of General Counsel within 30 days
from the date of this response.


JUL 2 3 2019
_____
Date

                                    _____
                                    J. Baltazar
                                    Regional Director

LENROY MCLEAN, 61524-054
BEAUMONT LOW FCI      UNT: XB      QTR: X06-028L
P.O. BOX 26025
BEAUMONT,  TX 77720

RECEIVED

NOV 2 2 2019

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: __Mclean Lenroy__  ___61524-054___  ___XB___  __Beaumont FCI-LOW__
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL**  Mclean moves to appeal #980176-R1 and relegate the same set of facts to satisfy PLRA. This particular filing was amended on 7-18-19- Mclean was not given this response on appeal until 7-29-19 for whatever reason I dont know. For the records, Mclean has appealed the amended version to avoid been time-bar with that appeal. Now Mclean moves to appeal this response, and look forward to explain such to the court shortly.

_7-29-19_
    DATE

_[signature]_
    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

**RECEIVED**

AUG 0 8 2019

Administrative Remedy Section
Federal Bureau of Prisons

_____
    DATE

GENERAL COUNSEL

CASE NUMBER: _980176-A1_

ORIGINAL: RETURN TO INMATE

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____
    DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

PRINTED ON RECYCLED PAPER

UPN LVN

BP-231(13)
JUNE 2002

**Administrative Remedy No. 980176-A1**
**Part B - Response**


This is in response to your Central Office Administrative Remedy Appeal where you allege staff at FCI Beaumont increased your security points based on fictitious and misleading information.  You allege retaliation and request an investigation with sanctions imposed on the responsible staff.  You also request your security points be corrected.

The Warden and Regional Director adequately addressed your complaint and we concur with the responses provided.  The correct classification of inmates is necessary to place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society.  Your custody classification form was updated in May 2019, and accurately reflects proper scoring for History of Violence (5 years minor) and total security points based on the guidelines outlined in Program Statement 5100.08, Security Designation and Custody Classification.  There is no indication a correction to your custody classification is required at this time.

Your claim of retaliation is not supported.  You have also raised this same issue in remedy number 980177-A1, and we find no need for further review or relief.  It is suggested you present any further questions regarding this matter to your Unit Team at your next Program Review in January 2020.

Accordingly, your appeal is denied.


_____10 \16\19_____                    _____
Date                                       Ian Connors, Administrator
                                           National Inmate Appeals

DAVIS/HANSON

976 426 -F1, R1, A1

1 OF 2

**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Prisons *Employee Misconduct P.S. 3420.11 cannot be address with or at unit team level*

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: McLean Lenroy _____ 61524-054 _____ C-RANGE 210 cell _____ Beaumont Low
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A– INMATE REQUEST** An investigation And sanction under P.S. 3420.11 N.O.O #32, 34, 35; And removal and destroying official documents. I conferred with Taylor on 4-30-19 about my BP-9 inregards to the fraud by forgery (18USC§1001) on Hanson And Davis Alteration of my UDC statement with Affidavit to OIA attached. Three filings post 4-2-19 was responded too, on this day warden Lewis called Taylor over (C-RANGE 217 cell) with this particular BP-9 And CCTV footage will confirmed such. Any document bearing my signature, submitted for filing is considered an official document and their are demonstrating facts through irrefutable video evidence and Affidavit attached hereto, to prove that Taylor removed this official document After he was called by the warden. On three seperate occasion I have attempted to establish records of these issue hinded by Taylor. It's been argued upon in the court's (McLean v Lewis 19-CV-111) And Regional office instructed me to "resubmit at institution level" on few occasion this same issue(s) Taylor has been Abusing his Authority destroying official document And should relinquish his position effective immediately As well As sanction.

4-30-19 _____ Exhibit A - Affidavit. _____ [signature]
DATE                         SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED

MAY - 2 2019

_____
DATE

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**

WARDEN OR REGIONAL DIRECTOR

CASE NUMBER: 976426-F1

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____            _____
DATE                         RECIPIENT'S SIGNATURE (STAFF MEMBER)

PRINTED ON RECYCLED PAPER            BP-229(13)
APRIL 1982

USP LVN

**FEDERAL CORRECTIONAL COMPLEX, BEAUMONT, TEXAS**
**PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #976426-F1**

This is in response to your Request for Administrative Remedy received May 2, 2019, wherein you allege staff are destroying official documents, specifically, rejected administrative remedies from the region.

A review of SENTRY reveals you have been assigned to the Special Housing Unit (SHU) since January 31, 2019. A further review of SENTRY revealed from January 31, 2019 to current you have filed four administrative remedies, subsequently rejected by the region with notations "you must first attempt informal resolution at the institution level." Further review of these four rejections reveals the following:

Administrative Remedy Rejection #970186-R1 with the abstract of "not handcuffed through food slot; yelled at by staff" was resubmitted by you at the institutional level and a response was provided in Administrative Remedy #970110-F2.

Administrative Remedy Rejection #969485-R1 with the abstract of "medical is not reporting hunger strike accurately" was resubmitted by you at the institutional level and rejected in Administrative Remedy #969485-F1 as you did not provide all the carbons; you were allotted five days to remedy this and you did not resubmit.

Administrative Remedy Rejection #971329-R1 with the abstract of "staff selectively discriminated against him" was resubmitted by you at the institutional level and a response provided in Administrative Remedy #974270-F1.

Administrative Remedy Rejection #971337-R1 with the abstract of "staff would not submit his BP9s" was resubmitted by you at the institutional level and a response provided in Administrative Remedy #974271-F1.

As you did not provide the specific nature of the documents you allege are being destroyed or the remedy numbers, only the information in SENTRY can be provided. In addition, you have provided no evidence staff have acted outside the scope of their duties.

Based on this information, this response to your Request for Administrative Remedy is for informational purposes only.

**FEDERAL CORRECTIONAL COMPLEX, BEAUMONT, TEXAS**
**PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #976426-F1**
**Page 2**


If you are not satisfied with this response, you may appeal to the Regional Director at Bureau of Prisons, South Central Region, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas 75051. Your appeal must be received in the South Central Regional Office within 20 days of the date of this response.

_____       5/17/19
M. K. Lewis, Warden                    Date

**U.S. Department of Justice**

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball–point pen. If attachments are needed, submit four copies. One copy of the completed BP–DIR–9 including any attachments must be submitted with this appeal.

From: McLEAN LENROY    REG. NO. 61524 054    UNIT C-RANGE 204 cell    INSTITUTION Beaumont FCI-Low
    LAST NAME, FIRST, MIDDLE INITIAL

Part A—REASON FOR APPEAL An idiotic response, where my allegation was misconstrued to mislead Taylor's mischievous and/or boolish behavior to avoid the appropriate staff involvement for review. In particular, I gave Taylor a BP-9 dated 3-25-19 and it was NEVER received by the warden's office until Apr 30, 2019 (see Admin# 97608-F1) when I filed this specific complaint. This complaint was considered filed on 3-25-19 when Taylor took it from me and he was responsible for submitting it too the warden's office, NOW if Taylor had submit it on or about 3-25-19, then the administrative coordinator is responsible for lengthy delay and process of such. Why process it after this filing of grievance with reference (of forgery by head and alteration of UDC)?). Hence, a couple of these admin. remedies referred to by the warden was filed with Taylor as well and went missing-in-action, caused me to moved to the next level (Regional) and was instructed to resubmit at the institutional level. Should your office and the warden uphold Taylor boolish behavior of abusing his authority and play games with the admin. remedy procedure, it will only continue unit the warden or your office get caught-up in the court's having to explain his mischievous behavior.

5-20-19
DATE

SIGNATURE OF REQUESTER

Part B—RESPONSE

RECEIVED

MAY 3 1 2019

BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRO

_____        _____
    DATE        REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE        CASE NUMBER: 976426—R1

Part C—RECEIPT

CASE NUMBER: _____

Return to: _____        _____        _____        _____
    LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____    _____       _____        _____        BP-230(13)
USP LVN    DATE    PRINTED ON RECYCLED PAPER    SIGNATURE, RECIPIENT OF REGIONAL APPEAL        APRIL 1982
    Previous editions not usable

Regional Administrative Remedy Appeal No. 976426-R1
Part B - Response

This is in response to your Regional Administrative Remedy
Appeal receipted May 31, 2019, in which you claim institution
staff delayed the processing of Request for Administrative
Remedy #976087-F1 and destroyed other Requests for
Administrative Remedy you submitted on or about March 25, 2019,
causing you to submit appeals to this office, which were
rejected.  You request disciplinary action against the staff in
question.

You provide no evidence to substantiate your claims, and
relevant records do not support your claims.  Electronic
administrative remedy records indicate Request for
Administrative Remedy #976087-F1 was received on April 30, 2019,
and timely responded to on May 8, 2019.  This office received
Regional Administrative Remedy Appeal #976087-R2 on June 7,
2019, and a response to that appeal is forthcoming.
Additionally, since March 1, 2019, this office has rejected six
Regional Administrative Remedy Appeals you submitted.  Two
appeals (#976807-R1 and #976619-R1) were rejected because not
all four copies of the appeals were legible.  You resubmitted
both appeals, and responses to both are pending.  One appeal
(#969485-R1) was rejected because you did not correct defects
which resulted in the rejection of the underlying Request for
Administrative Remedy and resubmitted a corrected Request for
Administrative Remedy.

The remaining three appeals (#970186-R1, #971329-R1, and
#971337-R1) were rejected because you did not first seek an
informal resolution and formal relief at the institution level.
As the Warden indicated, after the rejection of these appeals,
you submitted Requests for Administrative Remedy about the
issues raised in each appeal.  The institution accepted these
submissions as request #970110-F2, #974270-F1, and #974271-F1
and timely responded to each request.

Based on the above information, your appeal is denied.

If you are dissatisfied with this response, you may appeal to
the Federal Bureau of Prisons, Office of General Counsel,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal
must be received in the Office of General Counsel, within 30
calendar days of the date of this response.

JUN 2 5 2019

_____
Date

_____
J. Baltazar
Regional Director

LENROY MCLEAN, 61524-054
BEAUMONT LOW FCI     UNT: XB     QTR: X06-028L
P.O. BOX 26025
BEAUMONT,   TX 77720

SEP - 4 2019

**U.S. Department of Justice**

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball–point pen.  If attachments are needed, submit four copies.  One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attach–ments must be submitted with this appeal.

From: _McClean Lenroy_ _61524054_ _XB_ _Beaumont_
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A—REASON FOR APPEAL** McLean would like to relegate Admin # 976426-R1 to satisfy PLRA, the rest is on the Courts to decide upon. This Appeal is timely

_7-15-19_
DATE

_[signature]_
SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED
JUL 24 2019
Administrative Remedy Section
Federal Bureau of Prisons

_____        _____
DATE                        GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE        CASE NUMBER: _976426-A1_

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
        LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____        _____
DATE        SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP–231(13)
APRIL 1982

USP LVN

**Administrative Remedy No. 976426-A1**
**Part B - Response**


This is in response to your Central Office Administrative Remedy Appeal where you allege a staff member at FCI Beaumont Low demonstrated "mischievous and boorish" behavior in regards to your administrative remedy filings.  You request the staff member's alleged behavior be addressed.

The Warden and Regional Director adequately addressed your complaint and the specific administrative remedies in question. Staff's actions were in compliance with policy and we concur with the responses provided.  Records show you have filed several administrative remedies while designated to FCI Beaumont Low and given the opportunity to resubmit rejected remedies in proper form.  You have not been hindered from filing a properly submitted administrative remedy and there is no evidence of staff malfeasance regarding this matter.

Accordingly, your appeal is denied.


_____8/26/12_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

Congressman

MAIL ISSUES

9-93989-FI, RL, AL

*Filed to Wash 12-19-19*

```
LENROY MCLEAN, 61524-054
BEAUMONT LOW FCI    UNT: XB    QTR: X06-028L
P.O. BOX 26025
BEAUMONT,  TX 77720
```

**FEDERAL CORRECTIONAL COMPLEX, BEAUMONT, TEXAS**
**PART B - RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #993989-F1**


This is in response to your Request for Administrative Remedy received October 15, 2019, in which you state your mail should not have been stamped.  For relief you request sanctions of staff members and a memorandum explaining why your filing was late.

A review of this matter revealed, you had mail returned due to a stamp on top of the sending address instead of the reverse side of the envelope.  On September 6, 2019, when you made the Mail Room Supervisor aware of the incident, the issue was addressed immediately and mail room policy was reissued to the mail room staff to prevent this from happening in the future.

If court deadlines are missed, you may present the documentation from the court to your Unit Manager for review.  Additionally, once you made staff aware of your concern, it was corrected immediately.

Therefore, based on the information above, this response to your Request for Administrative Remedy is for informational purposes only.

If you are not satisfied with this response, you may appeal to the Regional Director at Bureau of Prisons, South Central Region, 344 Marine Forces Drive, Grand Prairie, Texas 75051. Your appeal must be received in the South Central Regional Office within 20 days of the date of this response.


_____                    _____10/23/19_____
F. J. Garrido, Warden                             Date

**FEDERAL CORRECTIONAL COMPLEX, BEAUMONT, TEXAS**
**PART B - RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #993989-F1**

This is in response to your Request for Administrative Remedy received October 15, 2019, in which you state your mail should not have been stamped.  For relief you request sanctions of staff members and a memorandum explaining why your filing was late.

A review of this matter revealed, you had mail returned due to a stamp on top of the sending address instead of the reverse side of the envelope.  On September 6, 2019, when you made the Mail Room Supervisor aware of the incident, the issue was addressed immediately and mail room policy was reissued to the mail room staff to prevent this from happening in the future.

If court deadlines are missed, you may present the documentation from the court to your Unit Manager for review.  Additionally, once you made staff aware of your concern, it was corrected immediately.

Therefore, based on the information above, this response to your Request for Administrative Remedy is for informational purposes only.

If you are not satisfied with this response, you may appeal to the Regional Director at Bureau of Prisons, South Central Region, 344 Marine Forces Drive, Grand Prairie, Texas 75051. Your appeal must be received in the South Central Regional Office within 20 days of the date of this response.

_____                    10/23/19
F. J. Garrido, Warden                               _____
                                                    Date

U.S. DEPARTMENT OF JUSTICE *P.S. 3420-11*    REQUEST FOR ADMINISTRATIVE REMEDY

Federal Bureau of Prisons *Staff Misconduct cannot be address at unit team level*

Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

| From: | Mclean, Lenroy | 61524-054 | XB-28 | Beaumont FCI-LOW |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST** On the 4th of Sept. 2019 @ 4:35pm during the institutional mail call-Mclean was given a piece of legal mail addressed to the regional office. Upon scruting-the front of the envelope, Mclean notice that staff(s) assigned to the mailroom on 8-22-19 had knowingly and willingly stamped a (28 CFR § 540.18) statement directly over the mailing address of Mclean's outgoing special mail. See Exh.1...Specifically, under 28 CFR §540.18 staff shall stamp the following statement directly on the back side of the inmate's outgoing special mail See Exh.2... Mrs. Sheldon failure to monitor and/or trained individuals she supervised-had caused Mclean's first amendment violation-and they each should be held accountable for violations of 18 USC § 1701 obstruction of mails; 18 USC § 1702 obstruction of correspondance and P.S. 3420.11 standard of employee conduct had they been assigned to the mailroom on 8-22-19. Mclean requesting that referral of these criminal statue under p.s. 1350.01 be sent to the AUAS office for possible prosecution of these rogue staffs; 2) a memorandum be provided explaining Mclean's filing been late and 3) sanction of Sheldon and staff responsible for working the mail-room on 8-22-19 be sanction under P.S. 3420.11 standard of employee conduct. *See Exh. #3.*

9-4-2019
_____
DATE

_____
SIGNATURE OF REQUESTER

**Part B- RESPONSE**

OCT 15 2019

_____
DATE

_____
WARDEN OR REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE          CASE NUMBER: 998984-F1

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

_____
DATE

_____
RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)
APRIL 1982

USP LVN          PRINTED ON RECYCLED PAPER

Regional Administrative Remedy Appeal No. 993989-R1
Part B - Response

You are appealing the Warden's response to your complaint regarding the return of your special mail.  You request an investigation and prosecution of mailroom staff.

A review of your appeal revealed the complex processes a large quantity of incoming and outgoing mail daily.  The intent is to process mail in accordance with policy while doing so as efficiently as possible for all concerned.  In this instance, a review determined staff erroneously placed the outgoing mail stamp on the front of your correspondence, thus causing it to be returned.  There is no indication this incident was the result of anything other than inadvertent error.  Additional training and oversight was provided to mailroom staff to prevent this from happening in the future.

This response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Federal Bureau of Prisons, Office of General Counsel, 320 First Street, N.W., Washington, D.C. 20534.  Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

DEC 0 5 2010
_____
Date

_____
J. Baltazar
Regional Director

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball–point pen.  If attachments are needed, submit four copies.  One copy of the completed BP–DIR–9 including any attachments must be submitted with this appeal.

From: Mclean, Lenroy _____ 61524-054 _____ XB _____ Beaumont FCI-LOW
      LAST NAME, FIRST, MIDDLE INITIAL            REG. NO.        UNIT         INSTITUTION

**Part A—REASON FOR APPEAL** Mclean moves to appeal Garrido's idiotic response to admin #993989-F1 of staff misconduct-an attempt to cover-up the obstruction of mail and correspondance, a criminal offense under 18 USC § 1701 and § 1702. Mclean's exhibits attached to his BP-9 had demonstrated a criminal offense has occurred and should have been forwarded to the appropriate staff for an investigation and/or sanction to prevent such from recurring. Its a pattern of behavior for mail-room staff(s) to obstruct the mail and correspondnace, an issue pending in the court's Garrido is aware of an injunction filed by inmate Page. Mclean had submitted and attached a declaration to such-hence Mclean filed this particular grievance back in 9-4-19, which disappeared until a congressional inquiry was filed and inmate Page's injunction-Garrido had it process (admin 3993989-F1) and wrote this idiotic response 19 days later is more than enough to prove that he's not only an accomplice, but has also aided and abetted violation of Mclean's constitutional right. Mclean moves to relegated such and request still stand-because both Garrido and the regional director, based upon his/her response will have to answer to the court's, possible a juridictary committee for their inaction towards obstruction of mail and correspondance under 18 USC § 1701 and § 1702.    THIS COMPLAINT SHOULD HAVE BEEN FORWARDED TO THE APPROPRIATE STAFF FOR FURTHER INVESTIGATION-GARRIDO KNEW THE FBI WOULD HAVE INTERVENE AND INDIVIDUALS WOULD HAVE BEEN HELD ACCOUNTABLE, AN TO PREVENT SUCH HE CHOOSE NOT TO FORWARD SUCH TO THE FBI...

_10-25-19_ ____ THIS APPEAL IS TIMELY...      _____
     DATE                                            SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED

NOV 0 1 2019

BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRO

_____              _____
        DATE                          REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE              CASE NUMBER: 993989-R1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C—RECEIPT**

                                        CASE NUMBER: _____

Return to: _____  _____  _____  _____
           LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____

BP-230(13)
APRIL 1982



*House of Representatives*

# OFFICE OF CONGRESSMAN RANDY WEBER, TX-14

### 350 Pine St., Suite 730, Beaumont, TX 77701 (409)835-0108 Fax: (409)835-0578

## PRIVACY ACT RELEASE FORM - GENERAL AND VETERAN

UNDER THE PRIVACY ACT OF 1974, FEDERAL AGENCIES ARE PROHIBITED FROM DISCLOSING INFORMATION FROM YOUR FILES WITHOUT YOUR WRITTEN CONSENT. BY COMPLETING THIS FORM AND SIGNING THE PRIVACY ACT STATEMENT BELOW, YOU AUTHORIZE THE FEDERAL AGENCY/AGENCIES INVOLVED TO DISCLOSE SAID INFORMATION TO U.S. REPRESENTATIVE **RANDY WEBER** AND/OR MEMBERS OF HIS STAFF. SAID INFORMATION WITH BE KEPT CONFIDENTIAL BY THEM. YOU ALSO AFFIRM THAT THIS REQUEST FOR ASSISTANCE IS IN NO WAY AN ATTEMPT TO EVADE OR VIOLATE ANY FEDERAL, STATE, OR LOCAL LAW.

### REQUIRED INFORMATION

**NAME**

Mc Lean, Lenroy

LAST     FIRST     MI

**SOCIAL SECURITY NUMBER**

xxx — xx — 6318

XXX-XX-XXXX

**ADDRESS (DO NOT USE PO BOX)** FCI-Beaumont-LOW  P.O. Box 26020, Beaumont, Tx 77720

STREET     CITY     STATE     COUNTY     ZIP

| DATE OF BIRTH | TELEPHONE | ALTERNATE PHONE | EMAIL ADDRESS |
|---|---|---|---|
| May 4, 1972 | ( 917 ) 584-7740 | ( 718 ) 297-6976 | none |

**HAVE YOU OPENED A CASE WITH ANOTHER CONGRESSIONAL OFFICE?  IF "YES," WHO?:**

Honorable Pete Olson     [xx] YES     [ ] NO

**BRIEF DESCRIPTION OF ISSUE:** I have been housed here at Beaumont since 2014, and the situation here with the obstruction of legal mail has been ongoing-its a pattern for staffs violate my first amendment rights  and nothing becomes of grievances filed. Forinstant see attachment.

**PLEASE EXPLAIN WHAT ACTION(S) YOU HAVE TAKEN TO RESOLVE YOUR ISSUE, AND ANY**

**RESPONSE YOU HAVE RECEIVED FROM ANY OTHER AGENCY:** Several grievances has been filed-currently pending litigation within my circuit court of appeal (Southern District of New York) situation with mail not been delivered causing and/or interfering with the court process. Each complain goes unpunished, because staff cover for each other and cause incidents to keep recurring without no concerns.

### SECTION BELOW TO BE COMPLETED BY THE PERSON WHO IS THE SUBJECT OF THE RECORDS

**I CERTIFY, UNDER PENALTY OF PERJURY, THAT 1) I PROVIDED OR AUTHORIZED ALL OF THE INFORMATION IN THIS PRIVACY RELEASE, AND ANY DOCUMENT SUBMITTED WITH IT; 2) I REVIEWED AND UNDERSTAND ALL OF THE INFORMATION CONTAINED IN MY PRIVACY RELEASE AND SUBMITTED WITH IT; AND 3) ALL OF THIS INFORMATION IS COMPLETE, TRUE, AND CORRECT.**

| SIGNATURE (IN INK) | DATE |
|---|---|
| *[signature]* | 9-4-19 |

THIS FORM MUST BE SIGNED BY THE INDIVIDUAL REQUESTING ASSISTANCE. IF POA IS USED, PLEASE SUBMIT WITH THIS FORM.

**\*\*PLEASE NOTE: OUR OFFICE IS LIMITED TO ADDRESSING ISSUES WITH FEDERAL AGENCIES. STATE AND LOCAL ISSUES WILL BE FORWARDED TO CORRESPONDING OFFICES. TYPICALLY, STATE MATTERS INCLUDE HHS, FOOD STAMPS, CHILD SUPPORT/CUSTODY, MEDICAID, VOC REHAB, WORKERS COMP, TEXAS WORKFORCE, AND UNEMPLOYMENT.\*\***

WEBER FORM 1A-LC     PRIVACY ACT RELEASE FORM     MAY 2019

EX/1 #1

Lenroy McLean 61524 054
Beaumont FCI-Low
P.O. Box 26020
Beaumont, TX 77720

8/22/19
South Central Regional Office
Folces Dave
_____, TX
75051

Date: _____

The enclosed letter was processed through special mailing procedures
for forwarding to you. The letter has neither been opened nor inspected.
If the writer raises a question or problem over which facility has
justification, you may return the material for further information or clarification.
If the writer encloses correspondence for forwarding to another address, please
return the enclosure to the below address.
Mail Room
Low Security Institution
P.O. Box 26025
Beaumont, TX 77720

LEGAL MAIL

7772036025 BOSS

LEGAL MAIL

LENROY MCLEAN, 61524-054
DALBY CI     UNT: BLDG B    QTR: B02-017L
805 NORTH AVENUE F
POST,  TX 79356

**Administrative Remedy No. 993989-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal, in which you claim you had legal mail returned to sender, which should not have been.  For relief, you request an investigation.

We have reviewed documentation relevant to your appeal and, based on the information gathered, concur with the manner in which the Warden and Regional Director addressed your concerns at the time of your Request for Administrative Remedy and subsequent appeal.  As you were advised, there was an issue with a stamp being inadvertently placed on your legal mail.  You brought this information to staff members and it was corrected. You do not provide and additional information to show this is an ongoing issue or that your access to the courts is being hindered.

Based on the foregoing, this response is for informational purposes only.

_____2/20/20_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

U.S. Department of Justice

Federal Bureau of Prisons

*Total of NINE pages*

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

| From: | Mclean Lenroy | 61524-054 | XB-60 | Beaumont FCI-LOW |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

Part A - REASON FOR APPEAL Mclean moves to appeal the regional office response #993989-R1. Specifically, Mclean is not the first and only individual that this violation of 18 USC § 1701 and 1702 has happen too. This situation was even bought to the court's attention in Page v. Beaumont FCI warden case #19-cv-343 (USDC-ED TX Beaumont). This individual has filed numerous grievances and has been placed in the same category they placed Mclean-such was done intentionally. Mclean request still stand as to the violation of 18 USC § 1701 and 1702.

12-19-2019
_____
DATE

_____
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
DEC 3 1 2019
Administrative Remedy Section
Federal Bureau of Prisons

_____
DATE

ORIGINAL: RETURN TO INMATE

_____
GENERAL COUNSEL

CASE NUMBER: 993989 A1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL

REG. NO.

UNIT

INSTITUTION

SUBJECT: _____

_____
DATE

_____
SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN

PRINTED ON RECYCLED PAPER

BP-231(13)
JUNE 2002

fraud/conspiracy
976087 - F1, R1, A1.

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Staff misconduct P.S-3420.11*

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **McLEAN LENROY**    **61524054**    **C RANGE 213 cell**    **Beaumont Low**

LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST** An investigation of forgery by fraud and conspiracy amongst staff's. Specifically, McLean received Hanson's incident report 3-12-19 @ 5pm where Hanson exaggerated about when he became aware of incident and interview with McLean. See Exhibit A & B & (m) Hanson conspirator (McLean v. M.K Lewis (9-CV-111) Davis conducted McLean's UDC hearing and altered McLean's comment at the end of quotation alleging McLean "Also prohibited code does match description of incident." See Exhibit (C) McLean's detention order was forged to have McLean apprehended dated back to 1-31-19. Seeking sanction under 18 USC § 1001 (a)(i)(e)(3). 18 USC § 371 and P.S. 3420.11 Standard of Employee Conduct NOO # 34 & #35 of Hanson, Davis and others involve. McLean also move to have this entire incident report remove from his Records

3-25-19
DATE    SIGNATURE OF REQUESTER

**Part B– RESPONSE**

APR 30 2019

DATE    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**    CASE NUMBER: 976087-F1

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    ☻    _____    BP–229(13)
DATE    Printed on Recycled Paper    RECIPIENT'S SIGNATURE (STAFF MEMBER)    APRIL 1982

USP LVN

**FEDERAL CORRECTIONAL COMPLEX, BEAUMONT, TEXAS**
**PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #976087-F1**


This is in response to your Request for Administrative Remedy received April 30, 2019, wherein you state the detention order issued to "apprehend" you in the Special Housing Unit (SHU) on January 31, 2019, is fraudulent.  You further request the incident report be removed from your records.

You did not provide an incident report number or a copy of the incident report in question; therefore, we cannot address this concern at this time.

However, Bureau of Prisons staff members are expected to demonstrate respect, integrity and correctional excellence.  All allegations of staff misconduct are taken seriously and forwarded to the appropriate staff for review.

Based on this information, this response to your Request for Administrative Remedy is for informational purposes only.

If you are not satisfied with this response, you may appeal to the Regional Director at Bureau of Prisons, South Central Region, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas 75051.  Your appeal must be received in the South Central Regional Office within 20 days of the date of this response.

_____        _____
M. K. Lewis, Warden                     Date  5/8/19

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: _McLEAN LENROY_    _61524 054_    C-RANGE _204 cell_    _Beaumont Low_
    LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

Part A - REASON FOR APPEAL McLean moves to relegate the same set of facts within Admin #976087-F1. This particular grievance was submitted with exhibits (Declaration to I.A. & incident report) to u/m Taylor on 3-26-19 as instructed by the warden on SHU rounds. McLean stated to inquired about the whereabouts of his grievance before it was process some 36 days later (April 30, 2019) had the exhibits not attached the coordinator And/or warden should have contacted Taylor or rejected such for been incompleted because McLean's grievance made reference of exhibits. The date, signature of McLean, received date of warden's office and mention of exhibits (4th line of BP-9) are considered prima-facie that support McLean's arguments and demonstrated that either Taylor removed McLean's exhibits of the incident report that has evidence of Davis's malfeasance of duty or the warden exaggerated. (incident report #3233008). There are blatant violation of unethical conduct of personal vendettas of ① Hanson And co-conspirators committed forgery by fraud; ② Davis altered of UDC comment at end of McLean's quote; ③ u/m Taylor removal of exhibits And ④ the delay of filing McLean's grievance. McLean request for sanctions and removal of incident report still stand as per Admin #976087-F1

_5-10-2019_    This Appeal is Timely    _[signature]_
    DATE                                       SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

JUN 0 7 2019

BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRO

RECEIVED

MAY 2 0 2019

BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRO

_____    _____
DATE                                   REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                       CASE NUMBER: 976087-R1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____    _____
DATE                              SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN      PRINTED ON RECYCLED PAPER      BP-230(13)
                                                    JUNE 2002

Regional Administrative Remedy Appeal No. 976087-R2
Part B - Response

This is in response to your Regional Administrative Remedy
Appeal receipted June 7, 2019, in which you allege a Detention
Order issued to you was fraudulent.  You further request your
incident report be expunged and removed from your record.

The Bureau of Prisons takes allegations of staff misconduct very
seriously.  A review of your complaint has been conducted and
appropriate action taken. Be advised, information concerning
staff conduct and performance is protected by the Privacy Act, 5
USC 552a.  Therefore, you will not be provided any information
regarding the outcome of any review or investigation.  This
response is for informational purposes only.

This response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to
the Federal Bureau of Prisons, Office of General Counsel,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal
must be received in the Office of General Counsel, within 30
calendar days of the date of this response.

JUN 2 5 2019
_____
Date

_____
J. Baltazar
Regional Director

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: MAY 22, 2019

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTH CENTRAL REGIONAL OFFICE

TO  : LENROY MCLEAN, 61524-054
      BEAUMONT LOW FCI     UNT: XB    QTR: Z03-204UAD
      P.O. BOX 26025
      BEAUMONT, TX 77720

JUN - 3 2019

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID         : 976087-R1        REGIONAL APPEAL
DATE RECEIVED     : MAY 20, 2019
SUBJECT 1         : UNPROFESSIONAL, INAPPROPRIATE CONDUCT OR MISCONDUCT BY STAFF
SUBJECT 2         :
INCIDENT RPT NO:

REJECT REASON 1: ALL FOUR PAGES OF YOUR (BP-9) (BP-10) (BP-11) FORM MUST BE
                 LEGIBLE AND WORDED THE SAME. PHOTOCOPIES OF THE FORM WILL
                 NOT BE ACCEPTED.

REJECT REASON 2: YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN
                 15 DAYS OF THE DATE OF THIS REJECTION NOTICE.

REJECT REASON 3: SEE REMARKS.

REMARKS          : ALL FOUR COPIES OF YOUR BP10 MUST BE LEGIBLE.

ATT

The detail has been cured, and ready for processing of
total of 9 pages. Please take into consideration — I am in
the SHU

6-4-19

Thank you

LENROY MCLEAN, 61524-054
BEAUMONT LOW FCI      UNT: XB      QTR: X06-028L
P.O. BOX 26025
BEAUMONT,  TX 77720

SEP - 4 2019

DAVIS/HANSON
NEST
Important

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attachments must be submitted with this appeal.

From: _McLean Lenroy_    _61524054_    _XB_    _Beaumont_
    LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

Part A—REASON FOR APPEAL _McLean moves to relegate and satisfy PLRA because the last word would be left up to the courts' this appeal is timely of admin #976087-R2_

_7-15-19_
DATE

SIGNATURE OF REQUESTER

Part B—RESPONSE

**RECEIVED**

**JUL 2 4 2019**

Administrative Remedy Section
Federal Bureau of Prisons

_____
DATE

ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL

CASE NUMBER: _976087-A1_

Part C—RECEIPT

CASE NUMBER: _____

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____
DATE

USP LVN

PRINTED ON RECYCLED PAPER

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP–231(13)
APRIL 1982

**Administrative Remedy No. 976087-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal where you allege staff at FCI Beaumont Low acted unethically when your administrative detention order (ADO) for your January 31, 2019, Special Housing Unit (SHU) placement was allegedly forged and you received an unjust incident report.  You feel staff abused their authority and request staff be sanctioned and the incident report expunged.

The Warden and Regional Director adequately addressed your complaint.  As advised, your allegations were referred to the appropriate authority for review.  A thorough review will be conducted and proper action taken as deemed necessary.

In addition, the incident report you received on January 31, 2019, was subsequently expunged on May 2, 2019, and you are no longer housed in the SHU.

This response is provided for informational purposes.

_8/26/19_
Date

_Ian Connors, Administrator_
Ian Connors, Administrator
National Inmate Appeals

Letter/Subpoena Request
Sonya Cole  FOIA
976498-F1, R1
No Response
on A1

2 of 2   FOIA

**U.S. DEPARTMENT OF JUSTICE**                    **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons *Employee Misconduct P.S. 3420.11 cannot be address at unit team level*

Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

From: McLean Lenroy _____ 61524 054 _____ C-RANGE 210 cell1 _____ BEAUMONT LOW
        LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

Part A– INMATE REQUEST An investigation and sanction under P.S. 3420.11, 18 USC § 371 and §1001(a)(1)(c)(3) Sonya Cole (Scro) has administratively closed McLean Freedom of Information Act request in an attempt to concealed, cover up by trick scheme and/or device a material fact in a nefarious manner. Mrs Cole has demonstrated that no requested was impossible, when she honored McLean FOIA attached hereto. See Exhibit A

These request(s) are considered either to been irrefutable evidence either been currently litigated or pending litigation in the courts and/or Bureau of Prison investigation. McLean had put Ms Cole on notice and to the next effort to contact both Mr. Stroble (central office) and The director of OIP Dept of Justice about her nefarious motive and pending this response. McLean moves for sanction as referred above.

4-30-19
DATE                                            SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED
MAY - 3 2019

_____                          _____
DATE                                     WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**SECOND COPY: RETURN TO INMATE**                CASE NUMBER: _____

                                                 CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____                          _____
DATE                                     RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN          PRINTED ON RECYCLED PAPER              BP–229(13)
                                                        APRIL 1982

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball–point pen.  If attachments are needed, submit four copies.  One copy of the completed BP–DIR–9 including any attachments must be submitted with this appeal.

From: McLean Lenroy    6152405f    C-range 210 cell    Beaumont Low

LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A—REASON FOR APPEAL** My BP-9 was misconstrued in order to gain a tactical advantage. The exhibit was attached to show proof that Mrs Cole had fulfilled this same request before and submitted as a form of complaint of nefarious act. was not my intent. My BP-9 clearly states "Mrs Cole has demonstrated that no requested was impossible, when she honored McLean FOIA attached hereto. See Exhibit A." I will move to relegate the same set of facts and should your office not honor my appeal I will move to the next level to satisfy PLRA, because remedying such is not available at your level as well. Admin #976498-F1

5-8-19

DATE

SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED

MAY 2 0 2019

BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRC

_____    _____
DATE    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE    CASE NUMBER: 976498-R1

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    _____
USP LVN    DATE    Previous editions not usable    SIGNATURE, RECIPIENT OF REGIONAL APPEAL    BP–230(13)
APRIL 1982

Regional Administrative Remedy Appeal No. 976498-R1
Part B - Response

This is in response to your Regional Administrative Remedy
Appeal receipted on May 20, 2019, in which you challenge the
response to your FOIA request for the receipt and preservation
of a CCTV video of an incident at FCI Beaumont Low.  You claim
staff involved in the FOIA process are improperly not honoring
your request.

An investigation into your request indicates you filed FOIA
Request Number 2018-03684, requesting receipt and preservation
of the CCTV video of an incident which occurred on March 2,
2018, during the evening meal in the dining hall at FCI Beaumont
Low. You were informed by the South Central Regional Office in
writing on March 12, 2019, that one video was located pursuant
to your request, and the contents were redacted or withheld from
you pursuant to statutory FOIA exemptions.

The video in question was preserved for institutional
administrative reasons, not pursuant to your FOIA request.
However, the content of the video was withheld from you pursuant
to statutory FOIA exemptions.  An appeal of this FOIA decision
is appropriately made to the Office of Information Policy
("OIP"), Department of Justice.  You were provided the complete
name and address for an appeal in the March 12, 2019, South
Central Regional Office letter in response to FOIA Request
Number 2018-03684.

There is no evidence staff engaged in any inappropriate conduct
in relation to this FOIA request, and the response to your FOIA
request was completely consistent with policy and statutory
authority.

This response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to
the Federal Bureau of Prisons, Office of General Counsel,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal
must be received in the Office of General Counsel, within 30
calendar days of the date of this response.


5/24/19
Date

A. Ciolli
Acting Regional Director

Admn # 976498-A1

Lenroy McLean 61524054
Beaumont FCI-Low
P.O. Box 26020
Beaumont, Tx 77720

April 18, 2019

Sonya Cole (SCRO)
Grand Prairie, Tx 75051

RE: # 2019-02996

Good day Mrs. Cole
    I am in-receipt of your response dated 4-10-19 in the above reference. Remember Mrs Cole dated back in March 12, 2019 (# 2018-03684), you located footage of CCTV without incident and its only fair that I put you on NOTICE.
Should you administratively closed any request for CCTV video footage in FCI-Beaumont-Low, to cover-up, scheme or device a material fact, A complaint will be filed against you for destroying and/or destruction of evidence given the fact there is an ongoing investigation with this particular reference # 2019-02996.

Have a good day

C.C. file

Lenroy McLean 61524 054
Beaumont FCI-Low
P.O. Box 26020
Beaumont, TX 77720

Jason Sickles counsel
344 Marine Forces Drive
Grand Prairie, Tx 75051

Case# McLean v. Lewis 19-cv-411

RE: NOTICE of Subpoena Duces Tecum

Good day Mr. Sickles

I hereby put your office on notice of subpoena to produce documents, and electronically stored information or materials or tangible objects or appropriate combination of descriptions:

A. CCTV footage of the following dates and locations within the Special housing unit at FCI-Beaumont-Low:

1. Jan. 31, 2019 Approx. 10:35AM Common Area (SHU)
2. Feb. 5, 2019 – Feb. 19, 2019 6AM to 4pm C-Range Cell 223 (SHU)
3. Feb. 19, 2019 – March 19, 2019 6AM to 4pm B-Range Cell 136 (SHU)
4. March 11, 2019 6AM to 4pm B-Range Cell 136 (SHU)

B. Radio transmittion between Lt. Hanson and Facilities electrical supervisor Jan. 31, 2019 Approx. 9:00 AM – 10:35AM

C. Log-book entry of SHU officers removal of McLean to be interviewed by Lt. Hanson

D. Inmate Micheal Thomas 65812-097 incident report (300 Series) dated Jan. 14, 2019 signed by both Lts Fontenot and Steffey.

Submitted by

Date: 6-13-19

Hand written copy...

**RESPONSE TO INMATE REQUEST TO STAFF**
**INMATE: McLean, Lenroy**
**REGISTER NO: 61524-054**
**INSTITUTION: FCC BEAUMONT (LOW)**
**UNIT: XB**

This is in response to your correspondence addressed to
J. Baltazar, Regional Director, South Central Region, forwarded
to us for review and appropriate action.

Specifically, you state you are requesting the following
information/documents via a handwritten "subpoena":

- CCTV footage for the Special Housing Unit for
  January 31, 2019; February 5 to February 19, 2019,
  February 19, 2019 to March 19, 2019 and March 11, 2019.
- Radio transmissions for January 31, 2019
- Special Housing Unit (SHU) log-book entries
- A copy of another inmates incident report

A review of this matter revealed, based on storage capacity, no
video is available to review for the dates you have referenced.
Radio transmissions cannot be recorded.  The remaining items
requested fall under the Freedom of Information Act.  All Freedom
of Information (FOI) requests must be directed to the following
address by the individual seeking documentation:  Freedom of
Information, Act/Privacy Act Section, Office of General Counsel,
Room 841, Federal Bureau of Prisons, 320 First Street, NW,
Washington, DC, 20534.

If you are not satisfied with this response, you may utilize the
Administrative Remedy Process.

_____              8/1/19
M. K. Lewis, Warden                    Date

cc:  J. Baltazar, Regional Director
     South Central Region

SCR/BML

To: Central Office FOIA
320 First St N.W
Washington DC 20534

Received

APR 01 2019

FOIA/PA Section
Federal Bureau of Prisons

Re: McLEAN, LENROY 61524-054
Beaumont FCI - Low
P.O. Box 26020
Beaumont, TX 77720

RE: Freedom of Information Request of CCTV footage (SHU

Date: 3-20-19

Good day S.R/Madam
I would like to request under FOIA CCTV video footage of Beaumont FCI-Low special housing unit (SHU) be preserved for court litigations of the following dates:

① JAN. 31, 2019 approx 10:35 am McLean been apprehended after walking in the SHU with facilities;

② Feb. 5, 2019 thru Feb. 19, 2019 - RANGE C-223 cell during the 6am to 4pm shift; and

③ Feb. 19, 2019 thru March 19, 2019 - RANGE B-136 during the 6am to 4pm shift

Thank you

Ly McL

SCR/BML

April 17, 2019    Received

APR 2 3 2019

FOIA/PA Section
Federal Bureau of Prisons

Lenroy McLean 61524-054
Beaumont FCI-Low
P.O. Box 26020
Beaumont, Tx 77720

F.O.I.A Request
Washington, D.C. 20534

RE: FOIA Request Radio transmittion transcript,
    Second Request.

I would like to Request under FOIA, the radio/
walkie-Talkie transmittion of Lt Hanson with Mr
Powell and/or other facilities staff on Jan. 31, 2019
at approx 9am thru 10:45am that morning.
McLean has made this Request before and to
No Avail. This radio transmittion if possible, should
be preserved for future legal litigation in the
court's should the regional office choose to not
Release Such.

Respectfully Submitted
Lenroy McL

Hand-written copy...

JONES

980177-F1, R1

NO RESPONSE
on A-1

**U.S. DEPARTMENT OF JUSTICE** ~~P.S. 3420.11~~  **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons ~~Staff misconduct cannot be addressed at unit team level~~

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: McLean Lenroy _____ 61524 054 _____ SHU 20u _____ Beaumont Low

LAST NAME, FIRST, MIDDLE INITIAL _____ REG. NO. _____ UNIT _____ INSTITUTION

**Part A– INMATE REQUEST** A investigation of case manager Jones under 18 USC § 1001(a)(1)(2)(3) and 18 USC § 1002 and P.3920.11 as well as sanction and/or prosecution for knowingly and with intent mistate, defend and altered materally false and fictitious entry. My points are re-scored once a year, unless disciplinary action are taken that warrants a hicking of my points. C/M Jones had rescored my point dated "8" to Jan. 2019 has been 10 points, I am pending a disciplinary hearing and she revised my points has been "14" less than 6 months later, with "(5) NONE" for type discip RPT. This demonstrated C/M Jones anomosity, hostility and hatred for me has retort within my discrimination grievance pending. She has abuse her authority by taken advantage of her position to display unethical behavior and should be sanction and be prosecuted for such usage of government document to carry out such act. McLean request she correct my point (10) and sanction and/or prosecution of C/M Jones

5-31-19 _____ _~~McL~~_

DATE _____ SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED

JUN – 7 2019

DATE _____ WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

CASE NUMBER: ~~1801~~

**SECOND COPY: RETURN TO INMATE**

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____

LAST NAME, FIRST, MIDDLE INITIAL _____ REG. NO. _____ UNIT _____ INSTITUTION

SUBJECT: _____

DATE _____ RECIPIENT'S SIGNATURE (STAFF MEMBER) _____ BP–229(13)
APRIL 1982

USP LVN _____ PRINTED ON RECYCLED PAPER

**FEDERAL CORRECTIONAL COMPLEX (FCC), BEAUMONT, TEXAS**
**PART B – RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #980177-F1**

This is in response to your Request for Administrative Remedy received June 7, 2019, in which you allege the History of Violence score is incorrectly assessed on your Custody Classification form.  As relief, you request your History of Violence points be corrected to reflect a score of 10 instead of 14.

A review of your allegation reveals you were found guilty of Code 201, Fighting With Another Person, on August 19, 2014, while at FCI-II Oakdale.  Pursuant to P5100.08, <u>Inmate Security Designation and Classification</u>, "Any institution disciplinary hearing (UDC or DHO) finding that a prohibited act was committed during the current term of confinement will be scored as a history item."  Therefore, your History of Violence points have been applied according to policy.

Based on the above information, this response to your Request for Administrative Remedy is denied.

If you are not satisfied with this response, you may appeal to the Regional Director at Bureau of Prisons, South Central Region, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas 75051.  Your appeal must be received in the South Central Regional Office within 20 days of the date of this response.

_____          _____
M. K. Lewis, Warden                        6/18/19
                                           Date

U.S. Department of Justice

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: _McLEAN LenRoy_     _61524 054_   _217 Cell_  _Beaumont Low_
LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

Part A - REASON FOR APPEAL _McLEAN moves to relegate Admin #980177-F1 which has been mis-construed to gain a tactical advantage. In particular, McLEAN never once made refer-ence of "History of Violence score is incorrectly assessed on your custody classi-fication form" because such was done at OakdAle prior to transfer. What McLean will prove to the court's - is that c/m Jones knowingly and with intent mis-state, defraud and altered materially false and fictitious entry of government documents under 18 USC § 1001(a)(1)(2)(3) and 18 USC § 1002 when she scored McLEAN (1-29-19) to 10 pts and rescored McLEAN less than 6 mths later to 14 pts without McLEAN been sanctioned by DHO on charges and to make matters worst given other involved to cover-up her un-ethical behavior_

_6-20-19_
DATE

_____ signature _____
SIGNATURE OF REQUESTER

Part B - RESPONSE

**RECEIVED**

JUN 2 6 2019

BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRO

_____              _____
DATE                          REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE     CASE NUMBER: _980177-R1_

Part C - RECEIPT

CASE NUMBER: _____

Return to: _____     _____     _____     _____
          LAST NAME, FIRST, MIDDLE INITIAL              REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____              _____
DATE                          SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN          PRINTED ON RECYCLED PAPER                                    BP-230(13)
                                                                              JUNE 2002

Regional Administrative Remedy Appeal No. 980177-R1
Part B - Response

You are appealing the Warden's response wherein you allege your history of violence points on your Male Custody Classification form are incorrect.  For relief, you request your custody classification form be re-scored.

We have thoroughly reviewed your appeal and find the Warden appropriately addressed your concerns.  Program Statement 5100.08, Inmate Security Designation and Custody Classification, states any institution disciplinary hearing (UDC or DHO) finding that a prohibited act was committed during the current term of confinement will be scored as a history item.

A review of your records revealed on August 19, 2014; the Discipline Hearing Officer determined you committed the prohibited act of Fighting With Another Person, Code 201. Based on the DHO's determination, your Custody Classification Form was appropriately updated to reflect a minor history of violence within the last five years.

Based on the above information, your appeal is denied.

In the event you are dissatisfied with this response, you may appeal to the Bureau of Prisons, Administrative Remedy Section, 320 First Street, N.W., Washington, D.C. 20534.  Your appeal must be received in that office within 30 days from the date of this response.


JUL 2 3 2019
_____
Date

_____
J. Baltazar
Regional Director

HIPPA
969364 - F1, A2
MISPLACED R1

**FEDERAL CORRECTIONAL COMPLEX, BEAUMONT, TEXAS**
**PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #969369-F1**


This is in response to your Request for Administrative Remedy received February 27, 2019, wherein you state a violation of your Health Insurance Portability and Accountability Act (HIPAA) rights. You further state the Special Housing Unit (SHU) staff are not accurately documenting their rounds.

Bureau of Prisons staff members are expected to demonstrate respect, integrity and correctional excellence. All allegations of staff misconduct are taken seriously and forwarded to the appropriate staff for review.

Based on this information, this response to your Request for Administrative Remedy is for informational purposes only.

If you are not satisfied with this response, you may appeal to the Regional Director at Bureau of Prisons, South Central Region, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas 75051. Your appeal must be received in the South Central Regional Office within 20 days of the date of this response.


_____                    _____
M. K. Lewis, Warden                                 Date

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: McLEAN LENROY    61524 054    CRANGE 217 cell    Beaumont Low
        LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

Part A - REASON FOR APPEAL the greater implication that was incompetent and/or worst malfeasance of Mr Sonnier exaggeration regards to certain threshold of concern. ① McLean put emphasis on the fact that by remaining silent on the HIPPA resulted into Acceptance of Guilty; ② Evaluation done on 2-8-19 by Lt. Hanson's (co conspirator) daughter was knew to Sonnier that she never documented hunger strike of McLean's weight; evaluation on 2-19-19 was coerced by another co conspirator (Dortch) which was confirmed by CCTV footage; ③ On 2-13-19 Psychology dept upon learning of McLean been on hungry strike since 2-6-19 told McLean "I will email medical just hang tigh"; and ④ Hence, McLean put his sentencing judge on Notice (SDNY 08-cr-789), filed an emergency motion within the local courts (EDTX 19-cv-111) and (EDCA 15-cv-275) so its well documented. Mr Sonnier is known to doctor/rubber stamp medical records to prevent repercussion of staff misconduct and McLean will show a pattern of such with the courts; dated back to Oakdale FCI. Admin #969369-R1

4-13-19
DATE

~~Amy McL~~
SIGNATURE OF REQUESTER

Part B - RESPONSE

IRQ·B
RSA

RECEIVED
APR 2 2 2019
Administrative Remedy Section
Federal Bureau of Prisons

RECEIVED
JUN 0 4 2019
Administrative Remedy Section
Federal Bureau of Prisons

1 of 9

_____
DATE

ORIGINAL: RETURN TO INMATE

_____
GENERAL COUNSEL

CASE NUMBER: 969369-A

Part C - RECEIPT

CASE NUMBER: 969369-A2

Return to: _____
       LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____
DATE        SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN      PRINTED ON RECYCLED PAPER      BP-231(13)
                                                  JUNE 2002

983683-F1, A1
misplaced R1

1 of 2    Refile missing Administrative Remedy

**U.S. DEPARTMENT OF JUSTICE**                    **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons  Staff misconduct P.3420.11 cannot be address at u/t level.

Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

From: McLean Lenroy _____ 61524 054  217 CELL  CRANGE ☒  Beaumont Low
        LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.        UNIT          INSTITUTION

**Part A– INMATE REQUEST** This administrative remedy was one of the resubmit because Regional office instructed McLean was to do so, At the institional level. McLean filed an appeal to the Regional office (#974271-F1) which he never got a response See Exh. A. McLean had inquiries of such with u/m Taylor, Warden Secty and CMC Garrison. Receipts was provided of other filings been pending excepted of the grievances against McLean's unit team. McLean moves to relegate the same set of facts within #974271-F1 without incident to satisfy PLRA as well as sanction of the individuals playing games with only unit team grievances. Each other grievance been moving along without in-cident, only problem McLean face is with grievance against unit team only

6-17-19
_____                                    _____
DATE                                         SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED
JUL - 9 2019

_____                                    _____
DATE                                         WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                  CASE NUMBER: 983683-F1

                                                CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____    _____    _____    _____
            LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____              _____
DATE                   RECIPIENT'S SIGNATURE (STAFF MEMBER)              BP–229(13)
                                                                        APRIL 1982
USP LVN              PRINTED ON RECYCLED PAPER

**FEDERAL CORRECTIONAL COMPLEX, BEAUMONT, TEXAS**
**PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #983683-F1**


This is in response to your Request for Administrative Remedy received July 10, 2019, in which you state you submitted an appeal to Administrative Remedy #974271-F1 to the Region and it has disappeared.

A review of this matter reveals you received a response to Administrative Remedy #974271-F1 on April 16, 2019.  SENTRY does not indicate an appeal (BP-10) has been processed.  However, please note the Region does not only process administrative remedies from FCC Beaumont, but throughout the entire South Central Region; therefore, it may be pending.

Based on the above information, this response to your Request for Administrative Remedy is for informational purposes only.

If you are not satisfied with this response, you may appeal to the Regional Director at Bureau of Prisons, South Central Region, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas 75051.  Your appeal must be received in the South Central Regional Office within 20 days of the date of this response.

_____                    ___7/16/19___
M. K. Lewis, Warden                                 Date

LENROY MCLEAN, 61524-054
BEAUMONT LOW FCI     UNT: XB     QTR: X06-028L
P.O. BOX 26025
BEAUMONT,  TX 77720

RECEIVED

NOV 2 0 2019

**Administrative Remedy No. 983683-A1**
**Part B - Response**


This is in response to your Central Office Administrative Remedy
Appeal wherein you allege a staff member has obstructed your
Administrative Remedy Process in the filing of Appeal No. 974271.
You further allege to have submitted another two appeals that are
Missing.  For relief, you request staff be held accountable.

We have reviewed documentation relevant to your appeal and, based
on this information, concur with the manner in which the Warden and
the Regional Director responded to your issues.  As indicated in the
lower level response, you were given the opportunity to refile Appeal
No. 974271 to the Regional level.  You provide not specific
information to substantiate your claims that your institution level
appeals are not being properly processed.

Your new allegation of missing two BP-9s will not be addressed in
this Administrative Remedy cycle.  You are advised to file a new and
separate Administrative Remedy at the institution level regarding
your concerns for appropriate review and response.

Accordingly, this response is for informational purposes only.



_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

| From: Mclean lenroy | 61524-054 | XB-28 | Beaumont FCI-LOW |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**     Mclean moves to relegate the same set of facts within his BP-9 and BP-10, because he had moved forward to the central office with an appeal on this selective discrimination that was rejected once. Hence Mclean will take advantage of resubmitting an appeal back to the regional, just to show the court's that he has been complying with their orders. But that still does not cure and/or fix the problem of the missing BP-10's. Not to mention another two BP-9 came up missing again 1)  against unit team of an incident that occurred during team meeting and 2) Rosia from legal department exaggerated abotu an incident. These two grievances are also missing-until staff responsible are held accountable and stiff sanction are handed down this pattern of behavior will continue to happen.

8-19-2019
_____
DATE

_____
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

**RECEIVED**

SEP 0 3 2019

Administrative Remedy Section
Federal Bureau of Prisons

_____
DATE

ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL
CASE NUMBER: 983683 -A1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____
DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN                    PRINTED ON RECYCLED PAPER

BP-231(13)
JUNE 2002

mold

967329-R1,R2
No Response
on
A1

U.S. DEPARTMENT OF JUSTICE                           REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons    *STAFF MisconDuct P.S. 3420.11 ENDANGERING Staff & inmate*

Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

From: *McLEAN LENROY*     *61524 054*     *C RANGE SHU-223*     *Beaumont FCI-low*
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A– INMATE REQUEST** *McLEAN WAS Exposed to black mold And AIR bourne Fungus while housed at Beaumont, the AIR-condition Are periodically turned off and the windows Are screwed shut from the outside-IN. The WARDEN And DOJ WAS put on Notice VIA EMAIL, with the concerns of the safety of both staff(s) And inmate(s) which fell on deaf. (P.S. 3420.11) EARS. McLean HAS been Experiencing symptoms of black mold/Fungus Exposure And was told " You have a cold " and given An inhaler for his respiratory problem. McLean request that the black mold/Fungus be inspected and cure by A specialist of A seperate entity to ba avoid spending money. Inmates and staffs health And safety matters.*

DATE *2-4-19*                                    SIGNATURE OF REQUESTER

**Part B– RESPONSE**

DATE                                             WARDEN OR REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE                    CASE NUMBER: *967329-R1*

                                                 CASE NUMBER: *7329 R2*

**Part C– RECEIPT**
Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION
SUBJECT: _____

DATE                                             RECIPIENT'S SIGNATURE (STAFF MEMBER)
USP LVN                                                              BP–229(13)
                                                                     APRIL 1982

U.S. Department of Justice *SENSITIVE MATTER*   **Regional Administrative Remedy Appeal**

Federal Bureau of Prisons *Employee misconduct P.S. 3420.11 endangering inmates & staff*

Type or use ball–point pen. If attachments are needed, submit four copies. One copy of the completed BP–DIR–9 including any attachments must be submitted with this appeal.

From: *McLEAN LENROY*     *61524 054*     *CRANGE SHU 223*     *Beaumont FCI-Low*

LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

Part A—REASON FOR APPEAL *This issue cannot be address at the institutional level, because the warden is aware of such. See Exh. A... McLean was exposed to black mold and air bourne fungus while housed at Beaumont-Low, the Air-condition are periodically turned off and the windows are screwed shut from the outside-in. The warden and DOJ was put on notice via email, with the concerns of safety of both staffs and inmates which fell on deaf ears. Emphasis added exhibit A. McLean has been experiencing symtons of black mold/fungus exposure and was told "You have a cold" and given an inhaler for his respiratory problem. McLean request that black*

*2-14-19*

DATE          SIGNATURE OF REQUESTER

Part B—RESPONSE *mold-fungus be inspected and cure by seperate entity and that any and all retaliation for expr exercising his first amendment right be cease and desist, because of the health and safety matters that are life threaten long or short term effect. This Appeal is timely*

*2-14-19*

DATE          REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

FIRST COPY: REGIONAL FILE COPY          CASE NUMBER: *96739-R2*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Part C—RECEIPT

CASE NUMBER: _____

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

USP LVN     DATE     Previous editions not usable          SIGNATURE, RECIPIENT OF REGIONAL APPEAL          BP–230(13)
                                                                                            APRIL 1982

FRUSTRATED
GRIEVANCES

**U.S. DEPARTMENT OF JUSTICE**                                    **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

| From: | Mclean, Lenroy | 61524-054 | XB 28 | Beaumont LOW |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST** The first amendment guarantees the right to petition the gove ernment for a redress of grievances without incident. Mclean was placed in the SHU(1-31-19) after his counselor Davis monitored an out-going email requesting information of the local media. See Exh.A--SIS Hanson made arrangement for the apprehend of Mclean, via an detention order and radio transmittion to facilitie when he learned that Mclean was already on a work detail in the SHU. The admini strative detention order submitted by Hanson beared forged signatures of two other staff. See Exh.B---On or about March 11, 2019, Hanson knowingly and inten ionally wrote an incident report and exaggerated about his knowledge of the in- cident dated back to 1-31-19, used "stale evidence dated 12-10-18" and conceale the context of the email that would have incriminated other individuals to cove and have Mclean penalized for exercising his rights. See Exh.C--Because Mclean has been experiencing difficulties with the process of his administrative remed ies, he had asked the local U.S attorney's office to intervene. See Exh.D Mclean placement in the SHU resulted into the lost(s) of his two man cell; work detail; wages; properties; hours for his apprentiseship studies and the mental anguish of Mclean inhumane treatment while housed in the SHU.Seeking sanction under p.3420.11 & 18 USC 1001(any retalitation will be noted);reinstate theabov and transfer out of Texas with 3-6mths of post regional denial of Mclean's tran fer...

6-30-2019
DATE _____                                    _____ SIGNATURE OF REQUESTER

**Part B- RESPONSE**

_____                                    _____
DATE                                                 WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                       CASE NUMBER: _____

                                                     CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.       UNIT       INSTITUTION

SUBJECT: _____

_____                                    _____
DATE                                                 RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP–229(13)

_Submit to Roy 7-29-19 @ 9:35Am_

**REQUEST FOR ADMINISTRATIVE REMEDY**

_Department of Justice_
_Bureau of Prisons_

_Staff misconduct P.3420.11 cannot be address with U/T_

Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

| From: Mclean, Lenroy | 61524-054 | XB | Beaumont FCI-LOW |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST** On 7-23-19 @ 1:23pm Mclean had team with Davis and W.Jones- upon entering the room, Jones asked Mclean "why do you even come to team?" with Davis been antagonistic and impersonating Daffy Duck with his tongue sticking out and spit been dispursed all over the table. Mrs. Jones thought such was hilarious, Mclean exited the room. By the 7-25-19 Davis posted a memo with the slogan "lets make XB great again", such slogan was racially motivated and the usage of the offenseive term was unethical. Davis repeatedly uses racial slur(s) toward immigrant inmates population to antagonized and/or upset a prison settir emphasis added in civil rights division complaint. See Exh. A...This BOP has been notified of racially disparaging term and nefarious motive of Davis engage ment that had caused racial riots with inmates on his caseload. Here, Davis Blatantly signed a memo that confirmed the usage of an offensive epithet with N regards to his unethical manner or against policy. See Exh.B...Mclean moves to make correction has to CRD complaint (exh.A) page 3;-Mclean recieved a pillow from c/m Ray and was given back his pay-grade. Davis and Jones refused to still reinstate Mclean's two man cell, spoke about with Capt. Brasfield on the releas day from segregation...Seeking sanction under P.3420.11, nature of offense #'s 30, 35,39 & 56 of both Davis and Jones. ANY AND ALL RETRIBUTION WILL BE NOTED..

7-27-19
_____
DATE

_____
SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____
DATE

_____
WARDEN OR REGIONAL DIRECTOR

_If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response._

ORIGINAL: RETURN TO INMATE

CASE NUMBER: _____

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____

| | | | |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

_____
DATE

_____
RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP–229(13)
APRIL 1982

USP LVN

PRINTED ON RECYCLED PAPER

UNICOR FEDERAL PRISON INDUSTRIES, INC.
LEAVENWORTH, KANSAS

**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: <u>Mclean Lenroy</u>      <u>61524-054</u>    <u>XB</u>    <u>Beaumont FCI-LO</u>

     LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.     UNIT     INSTITUTION

**Part A– INMATE REQUEST** A.W. Cutwright is tasked with supervision of the conduct of unit staffs at Beaumont FCI-LOW. Her primary duties entails the supervision of others involved in U.S government inquiries and/or unethnical conduct. Their are numerous complaints, Mrs. Cutwright knew of staff misconduct and cover-up to prevent investigation on the merits of the complaints-which allows misconduct to keep re-occurring. Specifically, Cutwright misstatement and exaggeration within this email (7-29-19 @ 1:07pm) was a material fact in connection with her supervision duties to delibrately indifference, cover-up the antagonization of these staff towards Mclean. See Exh.1--In the execution of her duties, Cutwright has this pattern of aiding & abetting Mclean's violation and functioning not as a advocate for the BOP, but rather as a advocate of the unit staffs-coving up and advocating their interest contrary to policy and statutory authorities. Mclean requesting an investigation into Cutwright, based on the above allegations,under racketeering influence and corrupt organization act § 1961(7)(8) and standard of employee conduct (p.3420.11) Nature of Offense #'s 32 & 34... The local U.S. atty will be put on notice with a copy of this particular complaint, any further retaliation and/or retribution will be noted.

<u>7-29-19</u>                                       

       DATE                                SIGNATURE OF REQUESTER

**Part B– RESPONSE**

 

 

_____                                 _____

       DATE                           WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                 CASE NUMBER: _____

                                        CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____                    

       LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.      UNIT      INSTITUTION

U.S. Department of Justice

Federal Bureau of Prisons

*Amended*
*Second Appeal on this Remedy # 980176-F1*

Regional Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: McLean, Lenroy                61524-054            XB            Beaumont LOW
      LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.            UNIT            INSTITUTION

Part A - REASON FOR APPEAL On or about 6-20-2019 Mclean filed his first appeal on admin #980176-F1, said response was signed by C. Cutwright-AW Cutwright had nothing to do with the incident on appeal. By 7-19-2019, Mclean was called to the Captain's office by U/M Jones-he was given an amended response to the above reference signed by AW Gutierrez. What's intriguing about this particular amended response was 1) the assistant warden that stopped by Mclean's cell and made the remark to Mclean was "AW Gutierrez"; 2) By Gutierrez's responding to this grievance create a conflict of interest and 3) regional office should habe responded to the first appeal, and then held individuals accountable to avoid ponfusing the process of the first appeal. Mclean moves to relegate the same set of facts with in his first appeal and the amended appeal-seeking sanction as well. McLean feel like this amended response was done to derailed his tort claim recently filed, because this makes no-sense.

7-20-2019
DATE

SIGNATURE OF REQUESTER

Part B - RESPONSE

**RECEIVED**

**JUL 26 2019**

**BUREAU OF PRISONS**
**LEGAL DEPARTMENT, SCRO**

DATE

REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

FIRST COPY: REGIONAL FILE COPY

CASE NUMBER: 980176-R2

Part C - RECEIPT

CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL            REG. NO.            UNIT            INSTITUTION

SUBJECT: _____

DATE

SIGNATURE, RECIPIENT OF REGIONAL REMEDY APPEAL

BP-230(13)
JUNE 2002

UPN LVN

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JULY 26, 2019

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTH CENTRAL REGIONAL OFFICE

TO  : LENROY MCLEAN, 61524-054
      BEAUMONT LOW FCI    UNT: XB    QTR: X06-028L
      P.O. BOX 26025
      BEAUMONT, TX 77720

RECEIVED
JUL 3 1 2019

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 980176-R2       REGIONAL APPEAL
DATE RECEIVED   : JULY 26, 2019
SUBJECT 1       : CLASSIFICATION/PROGRAM REVIEWS
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: SEE REMARKS.

REMARKS         : YOUR APPEAL HAS ALREADY BEEN ACCEPTED.  A RESPONSE
                  WAS PROVIDED ON 7/23/19.  YOU WILL RECEIVE IT
                  SHORTLY.

**FEDERAL CORRECTIONAL COMPLEX (FCC), BEAUMONT, TEXAS**
**PART B - RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #980176-F1 AMENDED**

This is an amended response to your Request for Administrative Remedy received June 7, 2019, in which you allege the History of Violence score is incorrectly assessed on your Custody Classification form as retaliation.  As relief, you request your History of Violence points be corrected to reflect a score of 10 instead of 14.

A review of your allegation reveals you were found guilty of Code 201, Fighting with Another Person, on August 19, 2014, while at FCI-II Oakdale.  Pursuant to P5100.08, Inmate Security Designation and Classification, "Any institution disciplinary hearing (UDC or DHO) finding that a prohibited act was committed during the current term of confinement will be scored as a history item."  Therefore, your History of Violence points have been applied according to policy. You have failed to provide any evidence or information indicating your score is based on retaliation.

Bureau of Prisons staff members are expected to demonstrate respect, integrity and correctional excellence.  All allegations of staff misconduct are taken seriously and forwarded to the appropriate staff for review.

Based on the above information, this response to your Request for Administrative Remedy is denied.

If you are not satisfied with this response, you may appeal to the Regional Director at Bureau of Prisons, South Central Region, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas 75051.  Your appeal must be received in the South Central Regional Office within 20 days of the date of this response.

_____          _7/18/19_____
M. K. Lewis, Warden                        Date

**U.S. DEPARTMENT OF JUSTICE** *Under P.C. 3420.11*          **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons *Staff mis-conduct and unethical behavior cannot be address with unit team*

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

**From:** McLean Lenroy                    61524-054    C-Lange 204 cell    Beaumont Low
          LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.       UNIT          INSTITUTION

**Part A– INMATE REQUEST** On 5-28-19 the Assistant Warden stopped by my cell and made a sarcastic remark towards me "Are you scared? I can call the doctor for you" with a smirk on his face as he walked away. The next day, I was pulled from my cell to see the doctor. I was hosted with such sarcasism, because it did'nt make sense until I recap prior events. My cellie Dominguez 24418-112 was quarantined and receiving treatment for "SCABIES" and was placed in the same cell with me. See Exh. A. Post the above date (5-31-19) c/m Wanda Jones delivered a "response to inmate request to staff" signed by the Assistant Warden with fictitious and misleading information and my made custody classification with points jacked-up to "14 points" within less than four mths of my last re-scored and Disciplinary charges still pending See Exh. B. Asst. Warden and his cronies are like vultures hovering me as a carcass and I am requesting any investigation and sanction of these investigation with hopes of them to cease and decease their unethical behavior towards me and correct my points.

DATE    6-2-19                                      SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED
JUN – 7 2019

DATE

**SECOND COPY: RETURN TO INMATE**

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

WARDEN OR REGIONAL DIRECTOR

CASE NUMBER: 980196-F1

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.       UNIT          INSTITUTION

SUBJECT: _____

_____          ☺          _____
DATE          PRINTED ON RECYCLED PAPER    RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN                                                                    BP–229(13)
                                                                           APRIL 1982

**Administrative Remedy No. 983684-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal wherein you claim your Request for Administrative Remedy No. 974270-F1 is missing.  For relief, you request to relegate your "selective discrimination" claim against your Unit Team raised in the aforementioned remedy.

We have reviewed documentation relevant to your appeal and, based on our findings, concur with the manner in which the Warden and Regional Director responded to your concerns at the time of your Request for Administrative Remedy and subsequent appeal.  As such, we refer you to those responses, rather than elaborating further with like conclusions.  It is noted you were advised in the Regional level response to resubmit a new appeal if the basis for the complaint raised in Administrative Remedy No. 974270-F1 still exist.  Based on this information, your appeal warrants no further action.

Accordingly, this response is for informational purposes only.


_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attach-ments must be submitted with this appeal.

| From: | Mclean Lenroy | 61524-054 | XB-28 | Beaumont FCI-LOW |
|-------|---------------|-----------|-------|------------------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL** Mclean moves to relegated the same set of facts to satisfy PLRA, because selective discrimination should prohibited by the BOP-and-individuals should be held responsible for their action. Their action/inaction are done with "I dont care", grievances should not matter with that kind of attitude. Sanction still stand.per admin #983684-R1

8-19-2019

DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

SEP 0 3 2019

Administrative Remedy Section
Federal Bureau of Prisons

_____    _____
DATE                       GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE         CASE NUMBER: 983684-A1

**Part C - RECEIPT**                   CASE NUMBER: _____

Return to: _____
         LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____                    _____
DATE                                       SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN         PRINTED ON RECYCLED PAPER                    BP-231(13)
                                                             JUNE 2002

To     Clerk of the Court
FR     McLean, Lenroy 61524 054
RE     Petition under §1983 And Federal Tort claim
Date   April 12, 2021


Good day Sir/Madam
       Enclose please find A petition under
§1983 And/or Federal Tort claim Act. The
grievances Are enclosed has Attachments
the exhibits Are seperate. Also, the law
Library does not have the appropriate inmate
account certificate for the application to
proceed in forma pauperis - my counselor
signed and dated the all transactions sheet.
I re-entered the FBOP dated back in 2-24-21
from A private prison, in which he does not have
access to their account records.
Thanking you in advance for your time and
consideration given

                                Respectfully Submitted


                                Lenroy McLean 61524 054
                                Beaumont FCI-MED
                                P.O. Box 26040
                                Beaumont, Tx 77720

Lenroy McLean 61524054
Beaumont FCI-MED
P.O. Box 26040
Beaumont, Tx 77720

CERTIFIED MAIL

7019 2280 0001 6170 6099



CLERK, U.S. DISTRICT COURT
RECEIVED
APR 15 2021
EASTERN DISTRICT OF TEXAS
BEAUMONT, TEXAS

Clerk of the Court
United States District Court
300 Willow Street Suite 104
Beaumont, Tx 77701

LEGAL MAIL

LEGAL MAIL